Gloria WALKER *v.* Ronnie WALKER

77-124                                        559 S.W. 2d 716

Opinion delivered January 9, 1978
(Division I)

*Tom Donovan* and *John W. Walker*, of *Walker, Kaplan & Mays, P.A.*, for appellant.

*Naif Samuel Khoary*, of *Sam Sexton, Jr., Law Firm*, for appellee.

GEORGE HOWARD, JR., Justice. The sole question to be resolved in this case is whether the trial court's decree changing custody of the parties' minor child, Crystal Walker, a female, age four, from the appellant, the mother, to appellee, the father, is based upon the preponderance of the evidence and upon competent and authentic evidence.

## THE FACTS

The parties were lawfully married on September 27, 1970, and one child was born to this marriage union. However, on August 2, 1973, an absolute divorce decree was granted to appellee from appellant in an uncontested action and custody of the parties' minor child, then two years old, was awarded to appellant, obviously by mutual agreement of the parties since the appellant waived service of summons and entry of appearance and further agreed that the divorce might be granted without further notice to her. The trial

court, however, retained jurisdiction of the case "for any further orders."

On May 18, 1976, appellee filed his petition for change of custody alleging, *inter alia,* the following:

"2) That since the date of the final decree of divorce, Respondent-defendant-mother has engaged in activities detrimental to the mental, emotional and moral well-being of said minor child, thus rendering Respondent-Defendant-mother unfit to have the fulltime care, custody and control of said minor child.

"3) That, in the best interests of the child, the above-mentioned decree should be modified to vest the fulltime care, custody and control of the child in the Petitioner-Plaintiff."

On May 24, 1976, appellant filed her response asserting that "the defendant denies engaging in activities detrimental to the well-being of Crystal Walker and denies that it would be in the best interests of the child to change custody."

On May 25, 1976, appellee filed his petition for temporary custody alleging essentially:

"3. That the Defendant-Respondent-mother has stated to Plaintiff-Petitioner-father, and his wife, that she will secret the child of marriage from the father, and flee the jurisdiction of this Court before the hearing date hereinabove set forth."

On May 25, 1976, the trial court entered the following order:

". . . custody of the minor child, Crystal, pending a final hearing on this matter, be temporarily vested in the Petitioner-Plaintiff-father, Ronnie Walker, subject to reasonable visitation by the defendant Gloria Walker and this case is continued for hearing on June 2nd, 1976 at 10:00 A.M."

On June 2, 1976, after conducting a hearing on

appellee's petition for temporary custody, the trial court ordered appellant to deposit a $500.00 cash bond in the registry of the court to insure the presence of Crystal in the jurisdiction of the court, vested temporary custody of Crystal in appellee with visitation rights afforded appellant in the home of appellant's mother "and only in that residence."

On September 1, 1976, after conducting a full scale hearing[1] on petition for change of custody, the trial court entered its final decree awarding permanent custody of Crystal to appellee and affording appellant the following visitation privileges:

> ". . . on the first and third weekends of each and every month from 6:00 P.M. on Friday to 6:00 P.M. on Sunday, visitation from 4:00 P.M. on Christmas Day to 6:00 P.M. on the first day of January of each year, visitation on Thanksgiving, Easter and the birthday of the child from 4:00 P.M. on each day to 4:00 P.M. the following day. The mother shall have custody during the month of July of each year and the mother shall also have reasonable visitation at times convenient to the mother and father, but only upon adequate notice being given to the father of such requested visitation."

## APPELLANT'S CONTENTIONS FOR REVERSAL

Appellant urges persistently the following points for reversal of the trial court's decree:

1. The court below erred in holding that a mother who cohabits with an unmarried black man is an unfit mother for purposes of child custody.

2. The chancellor erred in admitting into evidence a "special report" containing multiple hearsay, which error was prejudicial to the appellant.

3. The court below erred in admitting prejudicial inadmissible evidence and in considering evidence outside the record in reaching its decision.

---

[1] The record consists of 454 pages and contains numerous exhibits.

## THE DECISION

In appellant's first point relied upon for reversal, she alleges that the trial court erred in holding that "a mother who cohabits with an unmarried black man is an unfit mother for purposes of child custody." However, appellant argues in her brief that "In arriving at its decision to change custody to the father, the court below failed to articulate the specific reasons for its decision . . . the absence of any articulated reasons, strongly suggests that both the litigation and its outcome were racially motivated."[2] It appears here that appellant's reasoning has the appearance of a paradox or, indeed, a clear example of an antinomy.

However, prior to rendering its ruling in this case, the trial court made the following observation:

"I would like to first make this statement. That the court is not in any way influenced or prejudiced due to the racial issue in question, that has been injected in this case, for I have grown up with and I have enjoyed the company of and had and have many friends of the negro race.

"I have considered this case as I have considered every custody case that has come before this court and the court is going to award the permanent custody of the minor child, custody to the father. That I feel is to the best welfare and interest of this minor child . . . "

It is well recognized that the review of a chancery court proceeding by this Court is tried *de novo*. Consequently, only competent and authentic evidence is considered by this Court in making the review. In applying this rule, appellee's exhibit 2, a "Special Report" compiled by private investigator Bob Bailey regarding the alleged morals of appellant is disregarded in its entirety.

Appellant made a timely objection to the admissibility of the special report on the grounds that the report was hearsay

---

[2]Although appellant had ample opportunity to request the trial court to make specific findings, the record is void of any such action.

and in some particulars, hearsay within hearsay. Appellee sought to justify the admissibility of the document as an exception to the hearsay rule because the document may be characterized as recorded recollection or work product of investigator Bailey. This position is without merit for Rule 803(5) of the Uniform Rules of Evidence dealing with recorded recollection provides:

> "A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence *but may not itself be received as an exhibit unless offered by an adverse party.*" (Emphasis Added)

The document is not, nor any part thereof, admissible under Rule 803(6) of the Uniform Rules of Evidence as a record maintained in the course of a regularly conducted business activity inasmuch as appellee failed to lay a proper foundation to invoke the benefit of this rule.

Appellant also claims prejudicial error was committed by the trial court in reviewing a report prepared by the Department of Social Services in connection with an *ex parte* investigation made of appellee's home and standing in the community, but no one objected to the trial court reviewing the report and, moreover, no one requested that the report be made a part of the record. Consequently, we do not have the benefit of the content of this report. We conclude, therefore, that appellant has not demonstrated any prejudicial error on the part of the trial court in considering the report of the Department of Social Services.

In *Miller* v. *Miller*, 208 Ark. 1058, 189 S.W. 2d 371 (1945), this Court emphasized:

> "It is the well-settled doctrine in this state that the chancellor, in awarding the custody of an infant child or in modifying such award thereafter, must keep in view primarily the welfare of the child, and should confide its

custody to the parent most suitable therefor, the right of each parent to its custody being of equal dignity."

In *Phelps* v. *Phelps*, 209 Ark. 44, 189 S.W. 2d 617, we said, among other things:

". . . If the welfare of the child so requires, the decree may be modified without a change of circumstances, on the presentation of facts which although existing at the time of the original decree were not then presented or considered. The welfare of the child is the controlling consideration, and whenever it is shown that it is best for the welfare of the child that it be transferred from the custody to which it was awarded, the court will in its discretion modify the decree; otherwise modification is properly denied. The decree should not be modified merely to conform to the wishes of a parent, nor should it be modified for the reward or punishment of a parent, but the rights and wishes of the parents should, if possible, be considered. The court will take a child of tender years away from the mother to whom it was awarded only for the most cogent reasons."

In *Daily* v. *Daily*, 175 Ark. 161, 298 S.W. 1012, we said:

". . . whatever the result of the agreement between husband and wife with respect to the custody and support of their minor child, such agreement does not affect the right of a court of equity to award the custody of the child to either parent and to make reasonable provision for its support and education. *The reason is that the public has an interest in the matter, and that the interest of the child is the paramount consideration of the court.*" (Emphasis Added)

Other cases that have set forth rules of law as enumerated in the above cited cases are: *Weatherton* v. *Taylor*, 124 Ark. 579, 187 S.W. 450; *Massey* v. *Flinn*, 198 Ark. 279, 128 S.W. 2d 1008; *Haller* v. *Haller*, 234 Ark. 984, 356 S.W. 2d 9. In *Haller*, we said: "*It is a well-established rule that the welfare of the child is the polestar.*" (Emphasis Added)

After careful consideration and evaluation of the competent and authentic evidence, we are persuaded that the

preponderance of the evidence shows that the father's circumstances enable him to provide a better home and a more wholesome environment for little Crystal and that it is to the best interest of Crystal that custody be changed to the father.

Briefly, the evidence reflects that appellee has remarried and his wife has quit her job in order to look after and be at home with Crystal; appellee owns his own home, he is self employed and has a rather prosperous business, appellee and his wife have joined church and consequently, are in a position to make provisions for religious education for the child.

On the other hand, appellant admitted that she lived unmarried with a man in the presence of her daughter, that she has two jobs and works a total of 16 hours each day and if granted custody of Crystal, appellant would live for an indefinite period of time with appellant's mother who testified essentially that she saw nothing wrong with appellant living with a man unmarried. Appellant's expert witness, Dr. Steve Coleman, a psychologist, admitted on cross-examination that "Crystal is increasingly becoming of age where she will notice that the man who lives with her mother is not married to her. She will understand the significance of that."

Appellant seeks to minimize the apparent detrimental consequences of the illicit relationship with the unmarried man in the presence of Crystal by asserting the fact that she and appellee lived together in the presence of Crystal after appellee's divorce became final. While this Court does not condone any illicit relationship, the two incidents are not comparable. Although living together unmarried in the presence of Crystal, appellee and appellant are the natural parents of Crystal and, moreover, any time during this relationship, if the parties had decided to resume their legal marital relationship, it would have been readily a simple matter of having the divorce decree vacated and set aside and their prior legal relationship restored without the necessity of remarriage.

Further, this record reflects that appellant has no permanent residence and since the entry of the divorce decree acquired by appellee, appellant has had at least five different residences. This record also reflects that while Crystal was

confined to a hospital, by her father and his present wife, for treatment of scarlatina, appellant removed the child from the hospital's care without authorization from the attending physician simply because the physician had refused to inform appellant of the nature of the ailment or the treatment that he was administering to the child.

We conclude, therefore, that appellant has failed to establish that the decree of the Chancellor is not supported by a preponderance of the evidence, accordingly, the decree is affirmed.

Affirmed.

We agree: HARRIS, C.J., and GEORGE ROSE SMITH and FOGLEMAN, JJ.