IN THE MATTER OF THE ADOPTION OF
Elizabeth Ann MILAM
John D. Milam and Devonia Marie Milam *v.*
James David Evans and Donna Johnson

CA 88-301                                        766 S.W.2d 944

Court of Appeals of Arkansas
Division II
Opinion delivered March 22, 1989

*Phyllis J. Lemons*, for appellant.

*Stuart Vess*, for appellee James David Evans.

*Central Arkansas Legal Services*, by: *Willie E. Perkins, Jr.*, for appellee Donna Johnson.

JAMES R. COOPER, Judge. On May 12, 1987, the appellants, John and Devonia Milam, filed a petition to adopt Elizabeth Ann Milam alleging that the natural mother, Donna Johnson, had given her consent and that the consent of the natural father, James Evans, was not necessary. The probate court entered a temporary decree granting the adoption on July 19, 1987. On August 3, 1987, Donna Johnson attempted to withdraw her consent to the adoption. On September 17, 1987, James Evans filed a petition to set aside the adoption and on November 10 Donna Johnson also filed a similar petition. After a hearing on November 24, 1987, attended by all parties and their attorneys, the court granted temporary custody of the child to the Milams and ordered liberal visitation rights in the appellees under the supervision of the Arkansas Department of Social Services. Further, the court set a hearing on the merits for February 23, 1988. Following the February 23, 1988, hearing, the probate court found that, although it would be in the best interests of the child to be adopted by the appellants, the consent of the natural father was necessary and that the court could not grant the adoption over the natural father's objection. An order was entered placing custody of the child in the appellants, and both the natural mother and father were given visitation privileges. On appeal, the appellants raise three points for reversal and the appellees have filed cross appeals. We affirm.

The appellants first argue that James Evans had failed significantly to provide support for the child for a period of one year and that the probate court therefore erred in holding that his consent was necessary. We disagree.

Under Arkansas law, a petition to adopt a minor may not be granted without written consent of the parents, unless that consent is not required. Arkansas Code Annotated § 9-9-207 (1987), provides in part that consent to adoption is not required of:

A parent of a child in the custody of another, if the parent

for a period of a least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as provided by law or judicial decree.

The party seeking to adopt a child without the consent of a natural parent must prove by clear and convincing evidence that the failure to support the child not only continued for at least one year but also that it was willful, intentional, and without justifiable cause. *Manuel* v. *McCorkle*, 24 Ark. App. 92, 749 S.W.2d 341 (1988); Ark. R. Civ. P. 52(a). On appellate review, we will reverse the probate judge's findings of fact only if they are clearly erroneous or against the preponderance of the evidence. *Id.*

The record reveals that the appellees were divorced in April 1985 and that they had two children. According to the terms of the divorce decree, custody of their son was awarded to James Evans's parents, and the daughter, Elizabeth, who is the subject of this litigation, was placed in the custody of the appellant Donna Johnson. No child support was requested or ordered as to either party. Although James testified that he had not paid child support for Elizabeth, he explained that it was his understanding that he was to totally support the son, and that Donna was to totally support Elizabeth. He also stated that prior to entering the military he visited Elizabeth frequently and sent her gifts. According to James, he entered the Army in October 1986, and was stationed in Korea until October 1987. He stated that he found out about the adoption proceedings and returned to the United States to prevent the adoption. At the time of the hearing he was stationed in Little Rock. Devonia Milam stated that when she and Donna discussed the adoption of the child, Donna told her that Elizabeth's natural father had left before her birth, that he had never seen the child, and that she did not know his whereabouts.

■ We find that, under the facts and circumstances of this case, the probate court did not err in finding that the father's consent was necessary. Although a parent cannot simply turn a child's care and support over to another and be excused from the duty of providing support for the child, we cannot say that the probate judge erred in finding that, where James relied on the court order, his failure to support Elizabeth was willful or

unjustified. *See In re Adoption of Glover*, 288 Ark. 59, 702 S.W.2d 12 (1986); *Loveless* v. *May*, 278 Ark. 127, 664 S.W.2d 261 (1983).

For their second argument, the appellants assert that the trial judge erred in denying the petition for the adoption in spite of the fact that he found that it would be in the child's best interest for the adoption to be granted. The appellants are essentially arguing that the trial court should have granted the appellants' petition to adopt because James withheld his consent unreasonably.

■■ Arkansas Code Annotated § 9-9-220(c)(3) (1987) provides that the relationship of parent and child may be terminated when, in the case of a parent not having custody of a child, consent to an adoption is being unreasonably withheld contrary to the best interests of the child. However, while the primary consideration is the welfare of the child, this does not mean that the court can sever the parental rights of nonconsenting parents and order the adoption merely because the adoptive parents might be able to provide a better home. *Lindsey* v. *Ketchum*, 10 Ark. App. 128, 661 S.W.2d 453 (1983). In both *Lindsey* and *In re Adoption of Titsworth*, 11 Ark. App. 197, 669 S.W.2d 8 (1984), the conduct of the noncustodial parents amounted to child abuse and there was expert testimony that the treatment of the children resulted in social maladjustment. In the case at bar there is no evidence that James mistreated or abused Elizabeth. To the contrary, the probate judge found that James gave Elizabeth presents and visited her. Furthermore, the record shows that when James learned of the adoption proceedings, he returned from Korea to prevent it, and exercised his visitation rights in the interim period. He testified that he loved his daughter. In light of this evidence, we cannot say that the probate judge was clearly erroneous in denying the adoption. *See Wineman* v. *Brewer*, 280 Ark. 527, 660 S.W.2d 655 (1983). We hold that James did not unreasonably withhold his consent to the adoption.

For their third argument, the appellants contend that the probate court erred in denying the adoption because a temporary order of adoption entered in July 1987 had not been withdrawn. Citing Ark. Code Ann. §§ 9-9-215 and 9-9-213 (1987), the

appellants argue that the interloctory decree of adoption had the same force and effect as a final decree of adoption, and therefore the appellees' parental rights had already been severed.

In *McCluskey* v. *Kerlen*, 278 Ark. 338, 645 S.W.2d 948 (1983), the Arkansas Supreme Court held that once an interlocutory decree of adoption is entered, it is to be construed as a final decree if no subsequent hearing is required by the terms of that decree. (No further hearing was provided for in the case at bar.) Furthermore, consent cannot be withdrawn after the entry of such a decree unless the natural parent seeking to withdraw the consent has made a proper showing of fraud, duress, or intimidation.

Therefore, concerning this particular petition for adoption, the appellants' argument is correct as to the natural mother, Donna. Absent a showing of fraud, which will be discussed in a subsequent point, Donna's attempt to withdraw her consent was not timely made. However, we disagree with the appellants as the argument applies to the natural father, James.

James filed a motion to set aside the temporary order of adoption on September 17, 1987. In the motion he alleged that at the time the temporary order was entered he was in Korea, that Donna knew how to contact him, that he had visited with the child, and that Donna "did not truthfully state matters which pertained to Movant, James David Evans." He further alleged that he had not been served constructively. On November 24, 1987, a hearing was held at which all of the parties were present. The probate court issued a temporary order granting custody to the Milams and stating that all of the matters pertaining to the adoption would be litigated on February 23, 1987, at which time all the parties were to have their pleadings filed. There is no transcript of this hearing in the record before us and there is nothing in the pleadings which indicates that the appellants asserted the finality of the July 1987 temporary order of adoption as a defense to James' motion to set aside that order. We therefore decline to address this issue as it pertains to James because we do not consider issues raised for the first time on appeal.

On cross appeal, James Evans argues that the trial court erred in granting custody of the child to the Milams because there was no finding that he was an unfit parent. We disagree with his

argument.

Although there is a preference for a natural parent above all other custodians, the paramount consideration in child custody cases must always be the welfare and best interest of the child. *McKee* v. *Bates*, 10 Ark. App. 51, 661 S.W.2d 415 (1983). While we review adoption cases *de novo*, we will not reverse the probate court's decision unless it is clearly erroneous or clearly against the preponderance of the evidence. *Id*. Furthermore, in cases involving child custody a heavier burden is cast upon the court to utilize to the fullest extent all its powers of perception in evaluating the witnesses, their testimony, and the child's best interests. This Court has no such opportunity, and we know of no case in which the superior position, ability, and opportunity of the trial court to observe the parties carry as great a weight as one involving minor children. *Id.; Calhoun* v. *Calhoun*, 3 Ark. App. 270, 625 S.W.2d 545 (1981).

In this case the probate court specifically found that it would be in the best interests of the child to grant the adoption but that it must be denied because of the father's objection. At trial James testified that he had been incarcerated in Kansas in 1981 or 1982 for burglary. He also stated that he had given custody of his son to his parents and that if he were given custody of Elizabeth in this proceeding she would live with them until he remarried. Furthermore, he admitted that he did not communicate with Elizabeth for the entire ten-month period that he was in Korea, and that he did not send her a birthday card or write to her. James and Donna were separated before Elizabeth was born and at the time of the divorce she was six months old. The last time he visited with Elizabeth was immediately before he went into training in October 1986.

Although the probate court found that James' conduct toward Elizabeth was not sufficient to sever his parental rights, he did find that the appellants were the proper custodians for her, and we cannot say that the probate court erred.

On cross appeal, Donna Johnson argues that the probate court erred in not permitting her to withdraw her consent although she had not shown fraud. We find no merit in her argument.

At trial, Donna testified that she had permitted the Milams to take care of Elizabeth while she was getting on her feet financially. She stated that the Milams wanted her to sign a paper which would allow them to seek medical treatment for Elizabeth in case of an emergency, and that she believed she signed a document which granted the Milams guardianship of the child. She stated that she did not understand the difference between adoption and guardianship and that she assumed they were the same thing.

However, Devonia Milam testified that Donna told her that she could not take care of Elizabeth and that she believed the Milams could do a better job providing for her. She also stated that she made it clear to Donna that the only way that she and her husband would take Elizabeth would be through adoption, and that Donna agreed to their terms. The record shows that when Donna and the Milams went to the attorney's office to sign the adoption consent, Donna brought the child's shot record and birth certificate and gave them to the Milams. Devonia stated that it was made clear to Donna that her rights to the child would be · terminated if an adoption was granted, and that she would have no visitation rights.

Debbie Bates, a legal secretary, testified that she typed the consent and listened while it was read to Donna. She stated that the attorney explained the consent to Donna, Donna signed it, and that she notarized it. The consent itself clearly states that it is consent to adoption.

Donna tried to withdraw her consent in August 3, 1987, after the entry of the temporary decree of adoption in July, 1987. In order to withdraw her consent, it was necessary to show fraud, duress or intimidation. *Dale* v. *Franklin*, 22 Ark. App. 98, 733 S.W.2d 747 (1987), *McCluskey* v. *Kerlen*, 278 Ark. 338, 645 S.W.2d 948 (1983). We affirm the probate court's finding that Donna's consent was valid, and its refusal to allow her to withdraw it. After giving due regard to the probate court's opportunity to determine the credibility of the witnesses, we cannot say that the probate judge's decision was clearly against the preponderance of the evidence. *Chrisos* v. *Egleston*, 7 Ark. App. 82, 644 S.W.2d 326 (1983).

Donna Johnson's last argument on cross-appeal con-

cerns whether the trial court erred by applying the best interests of the child standard. It is her contention that the probate judge should have considered whether or not she had failed without justifiable cause to communicate with the child for one year, or failed to support her for one year. Ark. Code Ann. § 9-9-207 (1987). The argument is without merit because, as explained earlier, the issue concerning Donna's consent was limited to the question of whether her signed consent was procured by fraud. The question of whether her consent was or was not necessary is irrelevant in light of our holding that the probate court correctly ruled that her consent was validly given.

Affirmed.

CORBIN, C.J., and JENNINGS, J., agree.