Judy Lynn (Hollowell) BENNETT *v.* Michael Lynn
HOLLOWELL

CA 89-485                                      792 S.W.2d 338

Court of Appeals of Arkansas
Division I
Opinion delivered June 27, 1990

*Herrod, McGough & Herrod*, for appellant.

*Richard L. Proctor*, for appellee.

JUDITH ROGERS, Judge. The appellant, Judy Lynn Bennett, appeals from the chancellor's decision denying her motion for a change of custody. The parties were divorced by decree of October 10, 1984, wherein appellant was awarded custody of their son and daughter, Tommy, age three years, and Jody, then six months. By an order dated September 22, 1987, custody of the children was removed from appellant and placed with appellee, Michael Lynn Hollowell, and his wife, Mildred. The record reflects that this action was based on evidence that appellant was living with a man, Terry Dildine, to whom she was not married, and that the couple had shown sexually explicit photographs to the young children. In his findings, the chancellor also noted that there was evidence that Mr. Dildine had a drinking problem. Appellant was granted rights of visitation with the condition that she have no male overnight guests during visitation.

Appellant's first attempt to regain custody was denied by the chancellor in March of 1988. Upon appellee's petition for contempt, the chancellor entered an order on June 22, 1988, restricting appellant's visitation to her parents' home on a finding that appellant had violated the previous order by having Mr. Dildine spend the evening at her home during periods of visitation.

In November of 1988, appellant filed the present action seeking a change in custody. As changed circumstances, appellant alleged that she had married Mr. Dildine, that no further instances of showing graphic photographs to the children had

occurred, and that the children had been endangered when appellee's wife, Mildred, had driven with the children while intoxicated. After a hearing held on May 31, 1989, the chancellor denied appellant's motion. It is from this decision that appellant brings this appeal.

Appellant raises the following two issues for reversal:

I

THE TRIAL COURT ERRED BY FAILING TO CONSIDER THAT THE APPELLANT PROVED A CHANGE IN CIRCUMSTANCES IN THAT SHE HAD REMARRIED AND HAD A SATISFACTORY HOME ENVIRONMENT, ALL FOR THE BEST IN-TERESTS AND SAFETY OF THE TWO MINOR CHILDREN.

II

THE TRIAL COURT ABUSED ITS DISCRE-TION, BASED ON THE CONFESSED ALCOHOLIC STEP-MOTHER'S STATEMENTS AND HER CON-VICTION FOR D.W.I. WITH THE CHILDREN IN THE AUTOMOBILE, BY SAYING THAT HE WAS SATISFIED IT WOULD NOT BE REPEATED.

At the hearing on this matter, the appellant testified that she had married Mr. Dildine in June of 1988, and that he had a good relationship with the children. She said that her husband still drinks a little, but that he does not consume alcohol in the presence of the children. Appellant related that she was present in court when Mildred pled guilty to driving while intoxicated. She said that she was upset with appellee for allowing Mildred to drive in that condition with the children, and that she was fearful for the children's safety. She further testified that she loved her children, that she takes them to church, and that she takes good care of them. She also said that her husband was not in need of treatment for his previously identified alcohol problem.

Terry Dildine, appellant's husband, testified that he was quitting drinking and had not had a drink in two weeks. He referred to himself as a "minor self drinker," and that he was weaning himself off alcohol. He said that the children were bright

and well-behaved, and that he wanted them in their custody as he felt they would be more secure. He also testified that he had not viewed a pornographic movie in a year.

Bobby Smith, a deputy sheriff in Woodruff County, testified that on October 31, 1988, he responded to a call and found Mildred with the children in her car that was backed off the road and stuck in mud. He said that Mildred smelled strongly of alcohol and that she stumbled and almost fell when getting out of the car. He related that Mildred failed the sobriety tests given, and that, in his opinion, she was intoxicated.

Mildred Hollowell also testified. She said that Tommy and Jody had lived with her and appellee for two and a half years. She related that when first placed in their custody they were shy and withdrawn, and that it had taken them a year to adapt to the new arrangement. She said that they were now well-adjusted and happy, and that Tommy was on the honor roll at school. In this regard she said that she felt that another change of custody would be detrimental to the children. Mildred admitted that she was an alcoholic, but that prior to the incident on October 31st, she had been sober for seven years. She testified as to problems she had been having with her own two daughters as precipitating the recent drinking episode. She testified that she was regularly attending meetings of Alcoholics Anonymous, while appellee attended Alanon, and that she had experienced no further problems with drinking. She also said that appellee was unaware of how much she had had to drink on the night in question. Speaking of appellee, she said he was an attentive father whose children came first, and that the children worshipped him.

In his testimony, appellee also noted the difficulty the children initially experienced when placed in his custody, and said he shared the concerns of Mildred regarding another change of custody. He said that he was embarrassed and humiliated about Mildred's D.W.I., and realized the gravity of her problem. He admitted that he had been wrong to allow her to drive that night, but that he was not fully aware of her condition. He said that he had offered to help Mildred with her problem, and that he was going to Alanon meetings. He also stated that following the incident he had a long talk with Mildred, and had told her that she could not continue to drink. He further testified that Mildred

knew she had made a mistake and that he was confident it would not happen again.

The chancellor issued a memorandum opinion on June 14, 1989. In the opinion, he noted, among other things, that he considered the relationship between parent and child, as revealed by the parents' past conduct and by the strength and sincerity of the parents' desire to have custody. He said that he also deemed important the children's need for stability and continuity in their relationships with their parents. While he could not excuse Mildred's conduct, the chancellor determined that the October 31, 1989, incident was not a sufficient reason to change custody, as he was satisfied that it would not be repeated. Ultimately, he decided that a change of custody was not in the children's best interest.

As her first point, appellant argues that the chancellor erred by not considering the changed circumstances of her marriage to Mr. Dildine and evidence indicating that no more explicit photographs had been shown to the children. Essentially, she contends that the chancellor ignored this evidence and the steps she had taken to address these problems, which had contributed to her loss of custody. Secondly, she argues that the chancellor's finding that he was satisfied that the incident involving Mildred and the children would not be repeated represents an abuse of discretion.

Although we review chancery cases *de novo*, we do not disturb the chancellor's findings unless they are clearly against the preponderance of the evidence. *Riddle* v. *Riddle*, 28 Ark. App. 344, 775 S.W.2d 513 (1989). Since the question of the preponderance of the evidence turns largely on the credibility of witnesses, the appellate court defers to the superior position of the chancellor, especially so in those cases involving custody. *Hoing* v. *Hoing*, 28 Ark. App. 340, 775 S.W.2d 81 (1989). Custody awards are not made or changed to gratify the desires of either parent, or to reward or punish either of them. *Watts* v. *Watts*, 17 Ark. App. 253, 707 S.W.2d 777 (1986). As in all custody cases, the primary consideration is the welfare and best interest of the children involved; all other considerations are secondary. *Hoing* v. *Hoing*, *supra*. While the chancery court retains continuing power over the matter of child custody, it does not follow that a change in that

status should be made without proof of a subsequent material change in circumstances affecting the welfare of the children involved. *Thigpen* v. *Carpenter*, 21 Ark. App. 194, 730 S.W.2d 510 (1987).

When the chancellor first removed the children from appellant's custody, the decision was based on facts including the showing of sexually explicit photographs to the children, and overnight visitors with drinking involved. Appellant presented evidence attempting to give the appearance that the problems provoking her loss of custody had been rectified. However, it is evident from the chancellor's order that he did not consider the circumstances alluded to by appellant as being sufficiently material to warrant a change in custody. Conditions of life rarely remain constant. Thus, proof of changed circumstances alone does not ordinarily justify a change in custody. In order for custody to be changed, there must not only be proof of a *material* change in circumstances, but that proof must also be accompanied by evidence that the change would be in the child's best interest. Moreover, a material change of circumstances is a question of fact made by the chancellor who is often familiar with the parties, and how the change in circumstances presented affects the best interests of the children, which is the fundamental issue in custody cases.

Here, the testimony showed that appellant's marriage to Mr. Dildine occurred just five days after the order was entered restricting her visitation due to her having an overnight male guest in violation of the previous order. We believe the chancellor was justified in considering this violation and other past conduct, the timing of the marriage and the sincerity of the parties in making his decision. With the exception of the isolated instance of Mildred's D.W.I., there was no other evidence presented showing that custody with appellee had been detrimental to the children. We then cannot say that the lack of materiality found by the chancellor regarding the evidence of changed circumstances is clearly against the preponderance of the evidence.

We also cannot say that the chancellor's confidence that the unfortunate event involving Mildred would not be repeated was misplaced. The chancellor heard testimony as to both appellee and Mildred's recognition of her drinking problem, the firmness

of appellee in dealing with it, and the efforts both were making to combat it. Mildred testified that she had been sober for seven years prior to the incident, and had in the intervening months since then adhered to the treatment she was receiving. As this question involves primarily an assessment of credibility, we defer to the chancellor's superior position in making this determination. Based on our *de novo* review of the record, we cannot conclude that the chancellor's refusal to change custody is clearly erroneous.

Affirmed.

CORBIN, C.J., and JENNINGS, J., agree.