Yen My Tran VO *v.* Hoa Van VO

CA 01-908                                    79 S.W.3d 388

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered June 26, 2002

*Jones & Harper*, by: *Niki T. Cung*, for appellant.

*Hal W. Davis*, for appellee.

WENDELL L. GRIFFEN, Judge. Yen My Tran Vo appeals from a chancery court order placing custody of her son, Henry, with Hoa Van Vo, her ex-husband and the appellee in this case. She argues that the chancellor erred in changing custody because appellee did not prove a material change in circumstances. We agree, reverse the order changing custody, and hold that the findings upon which it is based are clearly erroneous whether viewed separately or in the aggregate.

The parties are originally from Vietnam. Appellant and her family moved to Santa Ana, California, in 1993 and lived there for one year before moving to Fort Smith, Arkansas. Appellee and his family moved to Fort Smith in the early 1990s. The parties were married in 1995. The marriage produced one son, Henry, born on April 14, 1996. They were divorced on December 2, 1997, by a consent decree in which the parties agreed that appellant should have custody of Henry.

In November 13, 2000, appellee filed a motion to modify custody, citing the fact that appellant intended to relocate to California. Shortly thereafter, on November 21, 2000, appellant filed a petition to move to Santa Ana, California. The chancellor held hearings on these motions on February 27 and on May 30, 2001. The parties' testimony was taken through an interpreter. During the first hearing, the chancellor denied appellant's motion to move Henry to California, and thereafter heard testimony relevant to

appellee's change-of-custody motion. At the conclusion of the testimony, the court ordered appellant, who at that time was living with her parents and brothers, to obtain her own place to live, and further ordered that home studies be conducted. The final hearing was held on May 30, 2000. By this time, appellant had obtained her own apartment, which the case worker found to be adequate although it was incompletely furnished.

In his written order, the chancellor cited several changes in circumstances that he found warranted a change of custody. Specifically, he cited: 1) the fact that the father has maintained a loving, stable home with Henry's extended family, while the mother petitioned for removal to an unknown location in California with a boyfriend she met over the Internet and whom she had seen no more than five times in three years; 2) the fact that the father's family had placed a premium on education, whereas the mother's attitudes, beliefs, traditions, and ambitions did not reflect such a desire; 3) the fact that the mother had raised Henry in a home with her two brothers, both of whom have criminal records, including felony charges of DWI and false imprisonment, whereas, the father's family are seeking diligently to assimilate and act as good citizens; 4) the mother's home did not provide a suitable home environment for Henry; and 5) the mother appeared to lack concern for Henry's best interest. Appellant was ordered to pay child support and was awarded standard visitation. This appeal followed.[1]

Appellant first argues that the chancellor erred in finding that a material change in circumstances warranted a change of custody. Second, she argues that the chancellor's finding that she was less credible than appellee and his witnesses is erroneous, given the language barriers involved in this case. Finally, she argues that the chancellor erred in modifying custody because he did so without finding that she was an unfit parent. We reverse based on appellant's first argument.

---

[1] Appellant filed a motion for reconsideration which was denied, but she does not appeal from the denial of that motion.

██ The standard governing the review of custody modifications is well-settled. Custody will not be modified unless it is shown that there are changed conditions demonstrating that a modification is in the best interest of the child. *See Lloyd v. Butts*, 343 Ark. 620, 37 S.W.3d 603 (2001). The chancellor's findings in this regard will not be reversed unless they are clearly erroneous. *See Campbell v. Campbell*, 336 Ark. 379, 985 S.W.2d 724 (1999). When an appeal is taken from a custody order, we afford great deference to the chancellor's determination; there are no cases in which the superior position, ability, and opportunity of the chancellor to observe the parties carries a greater weight than those involving the custody of minor children. *See Taylor v. Taylor*, 345 Ark. 300, 47 S.W.3d 222 (2001). While custody is always modifiable, our courts require a more rigid standard for custody modification than for initial custody determinations in order to promote stability and continuity for the children and to discourage repeated litigation of the same issues. *See Stellpflug v. Stellpflug*, 70 Ark. App. 88, 14 S.W.3d 536 (2000). However, evidence showing facts affecting the best interest of the child that were not presented or not known by the chancellor at the time the original custody order was entered may be entered into evidence. *See Campbell v. Campbell, supra*.

## I. The Stability of Appellee's Home

██ ██ We turn now to each of the factors cited by the chancellor that he found warranted a change of custody. It is true that this court does not examine each finding cited by a chancellor in isolation. *See Hollinger v. Hollinger*, 65 Ark. App. 110, 986 S.W.2d 105 (1999). It is also true that certain factors, when examined in the aggregate, may support a finding that a change in custody is warranted where each factor, if examined in isolation, would not. *See Hollinger v. Hollinger, supra* (holding that the non-custodial parent's remarriage, the custodial parent's move, or the passage of time, when examined in the aggregate, supported a change in custody). We hold that none of the factors in this case, either alone or in combination with the remaining factors, constituted a material change sufficient to warrant a modification of custody.

The first factor cited by the chancellor was appellant's request to relocate to California. He stated:

> [Appellant] came before this Court requesting permission to move with Henry to some unknown location in California with her boyfriend from Kansas, whom she communicates with principally on the internet and has only seen once in the last year and less than five (5) times total in three years; [appellant] had no plans to marry this man and had no employment arranged, nor did she even know where they would live in California. Although the Court denied [her] request to remove Henry to California and [she] apparently had elected to stay in this area, the Court finds that [her] plans (or lack of plans) pertaining to placing a five-year old boy in those circumstances, constituted such irresponsibility and immaturity on the part of [appellant] as to be in an of itself a substantial change of circumstances. The Court considers a person's ability to place a child in the correct priority in one's life and to make responsible and mature decisions pertaining to the best interests of the said child. This certainly was not done by [appellant] pertaining to her decision-making ability with regard to the request to move to California.

By contrast, the chancellor found that appellee had maintained a stable home and environment for Henry, which includes appellee's new wife and his parents, sisters and brothers. Appellee notes that appellant was not concerned about where she and Henry would live because her boyfriend would pay her expenses; that she did not think moving Henry away from his father's family was important, and that she failed to inform appellee of the intended move. He argues this demonstrates her inability to provide reasonable, responsible and mature parenting for Henry, which is a relevant consideration in determining with which parent a child should reside. *See Hollinger v. Hollinger, supra* (stating that when the best interest inquiry is opened, the method or style of parenting between two parents is pertinent).

The short answer is that appellant's request to move, however improvident, did not constitute a material change of circumstances because the relocation issue was moot when the chancellor decided to change custody. Appellant did not move to California. She obeyed the chancellor's order to move away from

her parents and into her own residence. The chancellor knew she had done so when he decided to change custody. Thus, there was no reason to decide the change-of-custody dispute using evidence ·the chancellor knew was no longer pertinent.

■ No Arkansas law holds that a simple request to relocate warrants a change of custody. Rather, the chancellor is to consider the request and determine whether such a move is in the best interests of the family unit as a whole. *See Staab v. Hurst,* 44 Ark. App. 128, 868 S.W.2d 517 (1994). Notably, the standard governing whether a chancellor should grant a petition to relocate (the best interest of the family unit as a whole) is different from the standard governing custody changes (the best interest of the child). In short, whether a chancellor should grant a petition to relocate does not necessarily bear on whether the chancellor should modify custody. If this is true where relocation petitions are pending and ripe for decision, it certainly holds true where no relocation petition is before the chancellor because it has been rendered moot.

■ Therefore, we hold that the chancellor erred in considering evidence relating to the mooted petition to relocate as a basis for determining whether custody should be modified.[2] Because the evidence concerning the nature and amount of communication between appellant and her boyfriend was not offered until after the court had denied appellant's motion to relocate, the chancellor properly deemed the evidence was inadmissible. Nonetheless, the chancellor clearly considered this evidence in making his custody determination. He should not have relied upon that evidence in reaching his decision regarding the change of custody.

---

[2] Although appellant does not appeal from the denial of the motion to relocate, because the chancellor cited the fact that she desired to relocate as a basis for changing custody, we note that the chancellor's order mischaracterizes appellant's motivation for requesting permission to move. His order clearly implies that appellant desired to relocate to an unknown location in California with a man she barely knows, whom she met over the Internet. To the contrary, it is undisputed that appellant and her boyfriend grew up together in the same Vietnamese village and have known each other since childhood. Further, appellant had been told by a friend in Santa Ana that appellant would likely be able to obtain employment at a store there earning more money than she currently earned.

## II. Appellee's Stable Home Life and Educational Goals

The chancellor also found that appellee's home was more suitable for Henry because appellee has maintained a stable home environment for his son and because appellee's family placed "a premium on education."

Appellant first responds that modification cannot be based solely on a change in the life of the noncustodial parent. *See Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996). Therefore, she asserts, the facts that appellee remarried (in August 2000), that his family has provided a loving and stable home, and that his family is more highly educated do not constitute material changes warranting a change of custody. Moreover, she argues that her financial inability to provide Henry with certain material items does not support a change of custody where the evidence demonstrates that his needs are otherwise met. *See Malone v. Malone*, 4 Ark. App. 366, 631 S.W.2d 318 (1982). Finally, she asserts that her financial means, as well as her lack of education and alleged attitude toward education, were known to appellee when he agreed that she should have custody; therefore, these are not changes that have occurred since the divorce decree was entered and cannot constitute grounds for a change of custody. *See Jones v. Jones, supra.*

We agree that the factors cited by the chancellor do not warrant modification of custody. Appellee lives with his wife and his extended family. The caseworker concluded that his home "is very adequately furnished and decorated and the upkeep and maintenance is excellent." She also concluded that it would be acceptable for Henry to reside with his father, if the chancellor chose. The chancellor found that appellee's home was more suitable because appellant's apartment was not completely furnished until after the home study was performed and did not provide an outdoor play environment for Henry.

However, the home-study case worker also concluded that appellant's income was sufficient, with child support, to adequately provide for Henry's needs. Henry had his own bedroom at appellant's apartment, his own computer, and the apartment was well-kept. Understandably, because appellant moved shortly before the home study was conducted, she had yet to completely

furnish the apartment. Nonetheless, the caseworker indicated that appellant's living arrangements were acceptable and that appellant was managing with the resources that were available to her. The caseworker also found that Henry was well-cared for and that his behavior was appropriate. Finally, the caseworker concluded that it was acceptable for the court to leave Henry in appellant's care.

■ We hold that the chancellor's finding that appellee's home environment constituted a material change in circumstances warranting a change in custody was clearly erroneous. The chancellor's finding flies directly in the face of the home-study report indicating that appellant's home was acceptable. Moreover, the lack of an outdoor play environment does not constitute a material change; if so, many apartment complexes would be deemed, per se, unsuitable living environments for children. In any event, Henry does not lack a suitable outdoor play environment because appellant testified that she takes him to the local park to play.

This is not simply a matter of the chancellor exercising his discretion to choose between two satisfactory home environments. Rather, in finding that appellant's home environment was unsuitable, the chancellor implicitly found that appellee's move from her parent's house to her own apartment, in compliance with his order, resulted in an environment that was so unsatisfactory that it warranted a custody change. This finding is not supported by the facts in this case.

In *Jones v. Jones, supra*, as in the instant case, the parties voluntarily entered into an agreement in which the mother was awarded custody of the parties' child. The father later remarried and filed for a change of custody, citing, in part, his subsequent remarriage. The *Jones* court held that remarriage alone was not a sufficient reason to change custody. The *Jones* court further held that, because the father was aware of the circumstances that he now alleged on appeal constituted a material change at the time of the custody agreement, the father could not use those grounds, nor grounds he had created (i.e., his remarriage) as grounds to modify custody.

■ Appellee's argument is similar to the argument rejected in *Jones v. Jones, supra*, and we likewise reject his argument

here. The fact that appellee lives with his extended family and they provide a warm, loving environment does not warrant a change in custody in the absence of a finding that appellant's home is in some way inadequate or that she is not providing the supervision, love, and care that her son requires.

Relatedly, the chancellor also cited as a basis for changing custody the fact that appellee's family has placed a "premium on education." Appellee argues that education is not a priority for appellant and her family, in stark contrast to his family. Appellee has worked and assisted all four of his siblings in obtaining college degrees. In addition, he has accumulated twenty-two hours of college credits while working full time, and his siblings intend to reciprocate and support him in pursuing his education.

The chancellor stated that the evidence concerning appellee's siblings' education was not "terribly relevant" to a determination of the issue in this case. Yet, he allowed the evidence as a "comparison" between the two families and expressly relied upon that testimony in reaching his decision. We hold that the chancellor erred in finding that the educational status and attitude of appellee's family justified a custody change.

This is one area in which it appears the chancellor found appellant to be less than credible because she indicated to the home-study case worker on April 3, 2000, that Henry was in preschool when he had not been there since February or March. Appellant indicated the reason she removed him was because the preschool center leaked and had no operable kitchen facilities due to an ice storm. The chancellor specifically cited appellant's decision to remove Henry from preschool in both his oral findings and his written order.

Certainly, the noncustodial parent's desire to pursue educational and vocational training in order to support her child is a relevant factor to consider when determining the child's best interests. See e.g., Phillips v. Phillips, 241 Ark. 90, 406 S.W.2d 325 (1986)(changing custody to mother where she obtained a G.E.D., obtained her cosmetology license, and became gainfully employed). However, here, appellant was already gainfully employed and had worked for the same employer for nearly seven

years. She was not required to pursue an advanced degree in order to provide for her son. This is supported by the fact that the caseworker testified that appellant's income, with child support, was sufficient. In short, the simple fact that appellee and his family have pursued advanced degrees does not warrant a change in custody. Such a finding smacks of elitism, particularly absent evidence that appellant has acted to hinder Henry's education.

Even giving weight to the chancellor's credibility determinations, the testimony does not demonstrate that appellant evinces a detrimental attitude toward Henry's education. To the contrary, the chancellor's order evinces a cultural and gender bias against appellant. Appellant is not uneducated. She received the equivalent of a high-school education in Vietnam, and was working to obtain her G.E.D here; she testified that she hoped to further her education beyond that point. She also testified that Henry would go to school when the time came, that she would encourage Henry to obtain a proper education, and that he would be raised speaking both Vietnamese and English.

To affirm the chancellor's finding in this regard is tantamount to punishing appellant for her decision to remove her child from a preschool that leaked and lacked kitchen facilities due to an ice storm, and to allow the child to stay with a friend. On one hand, the chancellor applauded appellee for observing the Vietnamese tradition of living with his extended family. On the other hand, the chancellor criticized appellant for allowing her son to stay with a close friend rather than a preschool care center. Appellant's decision to allow her son to stay with a close friend is consistent with the same cultural norm, lauded by the chancellor, that encourages extended families to live together. Appellant was not required to enroll her son in preschool; it was certainly within her discretion as the custodial parent to determine Henry's daycare arrangements. There was no testimony or any other evidence that suggested that the provider she chose was unfit. In short, there was no evidence that the arrangement appellant made was not in Henry's best interests.

### III. Criminal Convictions of Appellant's Brothers

Appellant also argues that the fact that she previously resided in her parents' home with her brothers who had criminal convictions does not support a change in custody. Appellee's brothers have been convicted of DWI, false imprisonment, and carrying a weapon. We recognize that evidence concerning the moral character of a parent is relevant to the best interest of the child and to the issue of parental custody. See James v. James, 29 Ark. App. 226, 780 S.W.2d 346 (1989). This court has held that allowing persons with criminal convictions to be in the presence of one's children reflects on the parent's morality in allowing persons of questionable reputation and character to be around his child. See Stone v. Steed, 54 Ark. App. 11, 923 S.W.2d 282 (1996) (affirming change of custody to father where the mother allowed persons convicted of misdemeanors in her home and allowed persons to smoke marijuana in front of her child).

However, we agree that the fact that appellant once lived with her brothers who had criminal convictions is not sufficient to warrant a change in custody. Here, when made aware of the criminal records of appellant's brothers, the chancellor ordered appellant to find her own place to live, but he did not order her to prevent Henry from visiting his uncles. Appellant complied with all of the chancellor's orders. Therefore, because appellant no longer resided in the same home as her brothers at the time of the final hearing, the chancellor erred in citing the fact that she had lived with them as a ground for a change of custody. In this regard, the chancellor made the same error that he made when he considered appellant's mooted relocation petition.

Moreover, unlike the situation in Stone v. Steed, supra, appellant testified that her brothers did not drink in front of Henry and there was no evidence that they had ever acted inappropriately around him. Finally, this court has held that a custodial's stepparent's DWI conviction was not an adequate ground to warrant a change of custody. See Bennett v. Hollowell, 31 Ark. App. 209, 792 S.W.2d 338 (1990). If a DWI conviction of a custodial step-parent with whom the children reside is not sufficient to warrant a change of custody, then the convictions of the custodial parent's

siblings, with whom the parent no longer resides and with whom the chancellor did not forbid contact, does not warrant change of custody.

## IV. Appellant's Credibility

The chancellor further found that appellant's testimony was not forthcoming and was inconsistent, and that she appeared to lack concern for Henry's welfare. The chancellor stated in his written order that he considered "the moral turpitude, veracity and integrity of the parties and that in this instance, those factors constitute a change of circumstance . . . ."

Appellee maintains the chancellor's order is proper because the evidence demonstrates that appellant is not likely to allow Henry frequent and continuing contact with him. Further, he maintains that the order was proper because he is able to provide a better home with a more wholesome environment. *See Digby v. Digby*, 263 Ark. 813, 567 S.W.2d 290 (1978); *Walker v. Walker*, 262 Ark. 648, 559 S.W.2d 716 (1978); *Riley v. Riley*, 45 Ark. App. 165, 873 S.W.2d 564 (1994). However, these cases do not compel affirmance here because the conduct of the offending parent in those cases simply is not comparable to appellant's conduct.

For example, in *Riley*, the custodial parent surreptitiously removed the children from Arkansas without the father's knowledge. In *Digby*, the custodial mother obtained permission from the court to move to Tennessee, alleging that she had obtained a better-paying job when she had never even applied for one; she also had an affair with a married man and had slept with him in her children's presence. Further, in *Digby,* there was no evidence that the children had maintained the religious affiliations that had been fostered during the parties' marriage. In *Walker*, the noncustodial mother had moved five times in three years, had no permanent address, lived with a man who was not her husband in her daughter's presence, worked sixteen hours a day, and often left her daughter with her mother for an indefinite period of time.

By contrast, here, appellee lives alone. She regularly attends a Buddhist temple in Fort Smith and Henry sometimes accompanies her. Although she testified that she and her boyfriend intend to

enter into a romantic relationship, she maintained they had not done so yet. She does not work excessive hours, although she does sometimes work on Saturdays. Although it is regrettable that communications between appellant and appellee have ceased since the divorce, and although appellant did not allow extra visitation outside of the court-ordered visitation schedule, it is undisputed that she complied with each of the chancellor's orders, and that she continues to abides by the custody agreement. Even if appellant was not initially forthcoming regarding the fact that she removed Henry from preschool and regarding her motivation for seeking to relocate to California, her conduct in remaining in Arkansas with Henry and abiding by all of the court's orders demonstrates that she is willing to put Henry's needs before her own.

Moreover, it appears that some of the problems with appellant's testimony were due to the language barrier and difficulty of translation in this case. The chancellor acknowledged the difficulty caused by the language barrier. However, the fact that appellant had difficulty understanding and answering the questions posed to her did not make her less credible, nor does her demeanor on the stand, alone, justify a custody change, especially when considered in light of the language barrier. In short, even giving full weight to the chancellor's credibility findings, we hold that his credibility findings did not demonstrate a material change in circumstances sufficient to warrant a change of custody.

Finally, appellant also argues that the chancellor erred in modifying custody because he did so without finding that she was an unfit parent. However, the chancellor did not err in this regard because between parents, a showing of unfitness is not necessary to warrant a change of custody. *See, e.g., In re Milam v. Evans*, 27 Ark. App. 100, 766 S.W.2d 944 (1989).

Reversed.

HART, ROBBINS, and BAKER, JJ., agree.

STROUD, C.J., and JENNINGS, J., dissent.

JOHN F. STROUD, JR., Chief Judge, dissenting. I would affirm because I do not believe that the chancellor's decision to change custody to the appellee was clearly erroneous when

all of the factors considered by the chancellor are viewed together, as contemplated by *Hollinger v. Hollinger*, 65 Ark. App. 110, 986 S.W.2d 105 (1999).

Custody should not be modified "unless conditions have altered since the decree was rendered or material facts existed at the time of the decree but were unknown to the court, and then only for the welfare of the child." *Id.* at 112, 986 S.W.2d at 106. In this case, the parties agreed that appellant would have custody of Henry at the time of their divorce, so no evidence was presented to the court regarding this issue.

With regard to weighing appellant's petition to relocate to California as a part of his basis for modifying custody, the majority finds that such consideration was improper because the petition had been rendered moot as a result of its denial by the chancellor. While the petition itself may be a moot issue, the chancellor is certainly entitled to assess appellant's thought processes in bringing such a request to the court.

In the instant case, appellant testified that if she was allowed to move to California, she intended to live with her boyfriend without the benefit of marriage, but after the chancellor stated that he would not permit that, she said that she would find another living arrangement if the court ordered her to do so. Appellant testified that she was not concerned about expenses because her boyfriend would pay those. She stated she would work in a store in California and that she anticipated making more money, but she admitted that she had not yet even talked to the store owner about the prospect of employment. She said that if the job at the store did not work out, she had other friends who would help her.

Appellant was willing to move her young child to California and into a house with a man with whom she was romantically involved but to whom she was not married until the chancellor told her that he would not allow her to do so. Evidence concerning the moral character of a parent is relevant to the best interest of a child and the issue of parental custody. *Stone v. Steed*, 54 Ark. App. 11, 923 S.W.2d 282 (1996). Appellant had no solid job prospects in California, as she had not even contacted the store

owners regarding employment. Appellant's thought processes, as evidenced by her testimony, indicate that she is irresponsible and does not make major life decisions based upon the best interests of her child. Certainly, when determining whether a change of custody was warranted, the chancellor was entitled to take into consideration appellant's lack of ability to place Henry in the correct priority in her life.

· The majority, citing *Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996), also agrees that a custody modification cannot be based solely on a change in the life of the custodial parent. However, in *Hollinger, supra*, this court distinguished *Jones* from the facts in that case:

> We are cognizant that in *Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996), the supreme court held that the remarriage of the father, standing alone, was not enough to support a change in circumstances because he was aware of his impending new marriage at the time of the divorce when he gave custody to his ex-wife. Such was not the case here. Appellee was not contemplating this current marriage at the time of the original decree when custody was given to the mother. Those particular facts are not the same as are before us today.

65 Ark. App. at 114, 986 S.W.2d at 107. In the instant case, there was no testimony regarding whether appellee was contemplating remarriage at the time of his divorce from appellant or not, and no presumption can be drawn from this lack of evidence. Therefore, it was proper for the chancellor to consider appellee's remarriage and stable home environment along with his other bases for modifying custody.

The majority also criticizes the chancellor's decision to base his decision to modify custody in part ·on appellant's removal of Henry from the preschool in which he was enrolled and allowing him to remain with a friend. Appellant did remove Henry from the preschool in February or March of 2000 because of damage to the school due to an ice storm, for which she cannot be blamed; however, she indicated to the home-study caseworker in April 2000 that Henry was still in the daycare at that time. The chancellor was certainly entitled to interpret this deception as an indication that appellant was not being truthful and that she believed

that she would appear in a better light if the court thought that Henry was still enrolled in preschool.

The chancellor also based his decision to modify custody in part on the fact that appellant's brothers, with whom appellant was living until ordered by the court to make other living arrangements, had various criminal convictions, including false imprisonment and DWI. Although the majority states in a footnote that appellant asserted that appellee knew of the false imprisonment conviction and a carrying a weapon conviction, such an assertion does not appear in the abstract of appellant's testimony. However, in appellee's testimony, he stated that he was not aware of the false imprisonment offense at the time of his divorce from appellant, nor was he aware that each brother had been arrested for public intoxication. The chancellor apparently found appellee more credible with regard to this testimony.

The majority cites *Bennett v. Hollowell*, 31 Ark. App. 209, 792 S.W.2d 338 (1990), for the principle that a custodial stepparent's isolated DWI conviction was not an adequate ground to warrant a change of custody. However, in that case, this court *affirmed* the chancellor's decision, not reversed it. Furthermore, in the present case, it was not an isolated incident; rather, there were multiple convictions for various offenses.

Much is also made of the fact that the chancellor simply ordered appellant to move, which she did, and did not order appellant to keep Henry away from his uncles. In *Stone v. Steed, supra,* this court affirmed the modification of custody from the mother to the father, holding that "evidence of misdemeanor convictions [of the mother's new husband and of persons frequenting the mother's residence] reflected on [the mother's] morality in allowing persons of questionable reputation and character to be around her child. Such information was relevant in deciding the best interest of the child and who should have custody." 54 Ark. App. at 14, 923 S.W.2d at 284. Although the chancellor changed custody upon this basis in *Stone,* there was no indication that he ordered the appellant to keep her child away from these persons, who included her new husband. Likewise, in the present case, the chancellor changed custody based in part

upon appellant having Henry live with persons of questionable reputation and character. He ordered her to move into her own residence, which should certainly indicate that it is not in the best interest of Henry to be living with convicted criminals. This action again shows the lack of appellant's thought process in the context of what is in the best interest of her son.

Lastly, with respect to the chancellor's credibility determinations, the majority opinion suggests that the use of a translator for appellant's testimony may have unjustly had a bearing on the chancellor's assessment of her credibility. However, both appellant and appellee used the same translator, so it would seem that the language barrier played no part in the chancellor's credibility determinations.

There are no cases in which the superior position, ability and opportunity of the chancellor to observe the parties carries a greater weight than those involving the custody of minor children. *Taylor v. Taylor,* 345 Ark. 300, 47 S.W.3d 222 (2001). Based upon the discrepancies in appellant's testimony, the chancellor had the right to determine that appellee was more credible than appellant; furthermore, it is not the province of this court to second-guess such determinations, as the chancellor had the opportunity to observe the parties and hear their testimony.

In sum, I find that the circumstances cited by the chancellor as bases for a change in custody, while not sufficient standing alone, when viewed together as a whole constitutes a material change in circumstances. Furthermore, the decision that a change of custody to appellee is in Henry's best interest was not clearly erroneous. I would affirm the chancellor's decision to modify custody to appellee, and I am authorized to state that Judge JENNINGS joins in this dissent.