

Cite as 2014 Ark. App. 72

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–13–393

| | | |
|---|---|---|
| JESSICA LASSITER | | **Opinion Delivered** January 29, 2014 |
| | APPELLANT | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT |
| V. | | [NO. DR–2009-91] |
| DAVID BROWNING | | HONORABLE RANDY F. PHILHOURS, JUDGE |
| | APPELLEE | AFFIRMED |

**ROBIN F. WYNNE, Judge**

Jessica Lassiter appeals from an order of the circuit court in which the court granted full custody of her two children, A.B. and B.B., to their father, David Browning. She argues on appeal that the circuit court erred by finding that a material change in circumstances had occurred since the original custody determination and by finding that it was in the children's best interest to grant custody to David. We affirm.

The parties married on April 1, 2006, and separated in January 2009. After their separation, the parties entered into a separation and property settlement agreement in which they agreed to share joint legal custody of the children, with Jessica having primary physical custody and David having standard visitation. That arrangement is reflected in the decree of divorce entered on August 23, 2010.

David filed a petition for change of custody on June 11, 2012. In the petition, David

SLIP OPINION

alleged that Jessica did not have a permanent residence, that the children were left near a pond unattended, that the parties' four-year-old child was allowed to operate a four-wheeler without a helmet, and that the children were presented for his visitation dirty and unkempt. David requested that he be awarded full custody of the children. On July 11, 2012, Jessica filed a counterpetition in which she sought full custody of the children, alleging that David failed to assist her with the children's medical care during his visitation, failed to follow the visitation schedule, and constantly demeaned her in the children's presence.

At the hearing on the competing petitions for custody, David testified that he had married his current spouse, Randa Browning, in October 2011. He had worked as a lineman for City Water and Light for the past six years. According to David, since the parties' divorce, there had been ten to twelve locations where he had picked up or dropped off the children. According to David, Jessica and the children had lived in the following locations since the divorce:

- Jessica's mother's home in Bono on five or six occasions;

- An apartment in Brooklyn for two months;

- A house on Rich Road for two months;

- A house off of Highway 163 for two to three months;

- A home on Kitchen Street in Jonesboro for four to five months;

- Jessica's aunt and uncle's home;

- A camper in front of her aunt and uncle's home for two weeks;

- Jessica's grandmother's mobile home for one month;

- A mobile home in Laredo;



- An apartment at The Links complex for four months;

- Jessica's current mother-in-law's residence in Walnut Ridge; and

- An apartment in Bono.

Jessica was living in her mother's home at the time of the hearing. According to David, while the parties were married, they lived with her mother, her aunt and uncle, in a rented home, in student housing at Arkansas State University, and in an apartment. David testified that he had lived in two different places since the divorce.

David testified regarding an incident during which he witnessed the children, neither of whom can swim, playing unattended by a pond on Jessica's aunt and uncle's property. David also testified to instances in which Jessica allowed the children to ride youth-size four-wheelers without helmets. David stated that the older child, A.B., had missed six and one-half days during the first nine weeks of school. David expressed concern that the children were very dirty when he arrived to pick them up for visitation. He also regarded the clothes that they wore to be dirty, worn, and ill-fitting. David testified that Jessica suffers from a condition while pregnant that makes her prone to passing out. He stated that while Jessica was pregnant with her current husband's child, he witnessed her driving a car with his children inside. David testified that he did not exercise his visitation during the summer of 2011. Although his petition for change of custody alleged that Jessica barred him from exercising visitation, his testimony at the hearing was that he chose not to exercise his visitation because he did not want to pay for child care for the children. David alleged that Jessica is vague when notifying him of the children's school events and doctor's appointments.

David testified that DHS visited him the summer prior to the hearing regarding an

allegation that he had spanked one of the children with a belt, which left bruises. According to David, he was neither charged nor placed on the child-maltreatment registry following the visit.

Jessica testified that she is a stay-at-home mother who remarried the previous May and had a child the previous October. She stated that she had lived at four of the residences listed by David prior to the divorce. She testified that she owns the mobile home in Laredo and is renting it out. She stated that she and the children stayed in the camper in front of her aunt and uncle's home for only one or two nights. She testified that her relocations with the children were due largely to financial issues and claimed that the moves had ended with her most recent stay in her mother's home because her mother had given her the house.

Jessica stated that the children rode without helmets sometimes, but denied seeing any safety issue. According to Jessica, the four-wheelers are equipped with governors that restrict the maximum speed to five or seven miles per hour. She also stated that she has a hand-held kill switch that will turn off the engines. The children are not allowed to ride without adult supervision and had helmets at the time of the hearing. Jessica testified that the children were not allowed to play near the pond without an adult within twenty-five or fifty feet. She stated that on the day David witnessed the boys by the pond, her uncle was with them.

Jessica stated that the children are clean and cared for. She denied ever putting them in unsuitable clothing. She explained that A.B.'s absences from school were due to various illnesses and stated that he is an excellent student who is at the top of his class.

On December 14, 2012, the circuit court entered a letter opinion in which it found that there had been a material change in circumstances and that it was in the children's best

SLIP OPINION

interest for David to have custody. On January 11, 2013, the court entered an order in which it granted full custody of the children to David, with Jessica receiving standard visitation. This appeal followed.

A party seeking to modify custody must prove that a material change of circumstances has occurred since the last order of custody or that material facts existed at the time of the decree that were unknown to the court. *Boudreau v. Pierce*, 2011 Ark. App. 457, 384 S.W.3d 664. Custody will not be modified unless it is shown that there are changed conditions demonstrating that a modification is in the best interest of the child. *Vo v. Vo*, 78 Ark. App. 134, 79 S.W.3d 388 (2002). The circuit court's findings in this regard will not be reversed unless they are clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Chaffin v. Chaffin*, 2011 Ark. App. 293. While custody is always modifiable, appellate courts require a more rigid standard for custody modification than for initial custody determinations in order to promote stability and continuity for the children and to discourage repeated litigation of the same issues. *Vo*, *supra*. There are no cases in which the superior position, ability, and opportunity of the trial judge to observe the parties carry a greater weight than those involving the custody of minor children, and our deference to the trial judge in matters of credibility is correspondingly greater in such cases. *Id*.

Jessica's first point on appeal is that the circuit court erred by finding that a material change in circumstances had occurred. David testified that Jessica had lived in twelve different residences since the parties' divorce in 2010. He also testified that she had lived with her mother on five or six occasions during that time. David's testimony, if credited, is evidence



that Jessica had moved the children as many as eighteen times in approximately two years. The circuit court found that Jessica and the children had no established residence, only staying in one location for a few months at most. This points to a lack of stability in the children's lives. Jessica maintained that several of the moves occurred prior to the divorce and that she had permanently moved into her mother's home prior to the hearing. The circuit court expressly stated in its order that it did not believe Jessica's testimony regarding her alleged permanent relocation to her mother's home, and the court was not required to credit her testimony regarding when her relocations occurred.

In addition to the frequent relocations, David testified regarding instances in which the children were allowed to ride motorized vehicles without safety equipment and about the children being allowed to play near a pond without supervision. The circuit court stated in its order that it found this testimony disturbing. Given the totality of the evidence and allowing for the circuit court's superior position to judge the witnesses and weigh the evidence, we hold that the circuit court's finding that David proved a material change in circumstances is not clearly erroneous.

Jessica's other argument on appeal is that the circuit court erred by finding that it was in the children's best interest to award custody to David. The testimony at the hearing showed that Jessica had moved frequently, a trend the circuit court believed would continue and which does not allow stability for the children. The circuit court also found that Jessica had made questionable decisions regarding allowing the children to participate in activities in ways that could be considered unsafe. David's testimony was that he had stable employment, a stable residence, and a spouse who worked where the children would go to school. Again,

given the totality of the evidence and the deference due the circuit court, we hold that the circuit court's finding that it was in the children's best interest to award David full custody is not clearly erroneous.

Affirmed.

HARRISON and GLOVER, JJ., agree.

*Worsham Law Firm, P.A.*, by: *Brooke F. Steen*, for appellant.

*Fowler Law Firm*, by: *Thomas E. Fowler*; and
*Scholtens & Averitt, PLC*, by: *Chris A. Averitt*, for appellee.