BRANDON J. HARRISON, Judge
William Schreckhise appeals the Washington County Circuit Court order giving his ex-wife, Janine Parry, primary custody of the parties' two children. He argues that the circuit court erred in finding (1) that there was a material change of circumstances and (2) that it was in the children's best interest to be placed with Parry. We affirm.
The parties were divorced in October 2013, and the court awarded them joint custody of their two minor children. The divorce decree provided:
*784 a. Each party will have the children in his/her care and custody two days of the Monday through Thursday time period. The parties will alternate the Friday through Sunday time periods with the exact hours to be agreed upon by the parties. ...
b. The parties agree to divide equally all holiday and special visitation; however, in the event they are unable to agree, the parties shall follow the holiday and special visitation schedule set forth in the Court's Standard Visitation Schedule[.]
In March 2017, Parry petitioned to modify custody, asserting that there had been a material change of circumstances and that the children should be placed in her primary custody. Parry alleged that Schreckhise and his new wife had created an "adversarial environment that is not in the best interest of the children" and that Schreckhise had refused to provide her with certain information, like the children's medical-care providers and the names of overnight childcare providers. Parry also expressed concern with "a dangerous situation with Defendant's 22-year-old stepson, who is dealing with serious mental and emotional problems that have put the parties' minor children in immediate danger for their health, safety, and welfare." Schreckhise answered and generally denied Parry's claims; he also counterclaimed and argued that if the court does find a material change of circumstances, it would be in the children's best interest to placed in his primary custody.
After a day-long hearing on the matter, the circuit court found that a material change in circumstances had occurred and that it was in the children's best interest that sole custody be awarded to Parry. The court's written order contained these findings:
2. After the divorce, the parties interacted seamlessly and frequently regarding the children and the children's needs.
3. Dr. Schreckhise married in July of 2014. In August of 2014, Dr. Schreckhise began implementing a series of rules about how the parties would communicate, including limited communications in person and preferably only when spouses were available; requiring communication by email unless it was an emergency or time-sensitive, with spouses copied on the communication; and limiting interaction at the children's events to a "hi" or a nod.
4. In the summer of 2015, Dr. Schreckhise expanded the rules to add that Dr. Parry was not to talk to him at work,[1 ] was not to come to his house, was not to walk on the street in front of his house on North Willow Avenue or his wife's house on Washington Street,[2 ] and that they were to have separate parent-teacher conferences for each child.
5. Dr. Schreckhise testified that on the advice of his marriage counselor, he requested Dr. Parry not be present for the children's medical appointments if they fell during his visitation.
6. Dr. Schreckhise refused to inform Dr. Parry about the minor children's overnight childcare providers when requested by Dr. Parry.
7. In July of 2016, Dr. Schreckhise and his wife, Suzannah Schreckhise, became concerned about Dr. Schreckhise's twenty-three-year-old step-son, David Garrison.
*785 Mrs. Schreckhise filed an emergency petition for appointment of temporary and permanent guardianship of the person and estate of David. P. Garrison. The affidavit of David Garrison's father, included with Ms. Schreckhise's Petition, noted that David Garrison "since turning 18, has had multiple offenses evidencing a violent tendency including: destruction of property, violence toward family members, and violence toward past girlfriends.... [David has] engaged in reckless and dangerous activities."
8. Dr. Schreckhise allowed David Garrison to baby-sit his then ten-year-old children overnight in a hotel room in the spring of 2015.
9. Dr. Schreckhise did not communicate to Dr. Parry that his wife was seeking guardianship of David Garrison, though David Garrison was going to be in and out of Dr. Schreckhise's home with the parties' minor children present.
10. From September 2016 through December 2016, incidents with David Garrison occurred that resulted in Dr. Schreckhise seeking an order of protection and hiring off-duty police officers to provide security outside his house for a few days.
11. Dr. Schreckhise did not communicate to Dr. Parry about the need for the off-duty police officers or these incidents with David Garrison, except for one incident that occurred on December 25, 2016.[3 ]
12. Other than the Christmas day episode, Dr. Schreckhise's testimony was, "I didn't think I needed to tell [Dr. Parry] about David ... I was handling it."
13. Parents in a joint custodial arrangement have the obligation to communicate with each other about everything that affects the children. The parents' ability to cooperate in making shared decisions affecting the children is crucial and failure to cooperate in doing so constitutes a material change in circumstances.
14. August of 2014 clearly marked a significant shift in the way the parties communicated with each other.
15. This significant shift in the way the parties communicate, based on Dr. Schreckhise's rules, is clearly a material change in circumstances in the joint custodial arrangement, as the parties now are unable to effectively communicate about their children.
16. The joint custody arrangement is no longer in the minor children's best interest.
17. Dr. Schreckhise in an effort to assert his and his wife's autonomy has put up barriers for communication between Dr. Parry and himself. Dr. Schreckhise has followed the advice of his marital counselor to the detriment of his children by putting his new wife and their marriage ahead of the needs of the children. The rules set in place by Dr. Schreckhise are manipulative, controlling, and wholly inappropriate and are not in the minor children's best interest.
18. Dr. Parry has consistently advocated for a shared burden and blessing of taking care of the children and kept a free flow of information between herself and Dr. Schreckhise about the children. Dr. Parry encourages and fosters an open relationship between the children and Dr. Schreckhise and shares all information with him. Dr. Parry's efforts *786 and communication with Dr. Schreckhise have been child focused.
19. Therefore, it is in the best interest of the children that sole custody be awarded to Dr. Parry, subject to visitation in Dr. Schreckhise.
20. Visitation shall continue under the schedule established in the original decree: Monday and Tuesdays with Dr. Parry, Wednesday and Thursday with Dr. Schreckhise, and alternating weekends. With regard to holidays, in the absence of any agreement otherwise, the parties shall follow the Washington County Suggested Visitation Schedule[.]
Schreckhise has appealed the circuit court's order.[4]
Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. Anderson v. Thomas , 2013 Ark. App. 653, 2013 WL 5964473. Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. Id. The reason for requiring more stringent standards for modifications than for initial custody determinations is to promote stability and continuity in the life of the child and to discourage repeated litigation of the same issues. Id.
The party seeking modification of the custody order has the burden of showing a material change in circumstances. Anderson , supra. To change custody, the circuit court must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, it must then determine who should have custody with the sole consideration being the best interest of the children. Id. In reviewing child-custody cases, we consider the evidence de novo, but will not reverse a circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. Preston v. Preston , 2014 Ark. App. 58, 2014 WL 245783. Because the question of whether the circuit court's findings are clearly erroneous turns largely on the credibility of witnesses, we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. Ford v. Ford , 347 Ark. 485, 65 S.W.3d 432 (2002). There are no cases in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as great a weight as those involving minor children. See Vo v. Vo , 78 Ark. App. 134, 79 S.W.3d 388 (2002).
For his first point on appeal, Schreckhise argues that the circuit court erred in finding a material change in circumstances. Our case law holds that the mutual ability of the parties to cooperate in reaching shared decisions in matters affecting the child's welfare is a crucial factor bearing on the propriety of joint custody. Doss v. Miller , 2010 Ark. App. 95, 377 S.W.3d 348. When the parties have fallen into such discord that they are unable to cooperate in reaching shared decisions in matters affecting their children, then a material change in circumstances affecting the children's best interest has occurred. See id. This court does not examine each finding cited by a circuit court in isolation; certain factors, when examined in the aggregate, may support a finding that a change in custody is justifiable, although each factor, if examined in isolation, would not. See Vo , supra.
*787 Schreckhise denies that there were communication issues sufficient to constitute a material change in circumstances and recounts why he felt certain "boundaries" were necessary, including what he characterized as excessive communication from Parry. He contends that there was no evidence that the parties could not cooperate in reaching shared decisions or that the parents had fallen into such discord that a change in circumstances had occurred. He also disagrees with the circuit court's findings that he failed to keep Parry informed regarding childcare providers, medical appointments, and the ongoing situation involving David Garrison.
In support, Schreckhise cites Geren Williams v. Geren , 2015 Ark. App. 197, at 13, 458 S.W.3d 759, 767, for the principles that "petty complaints and parental gamemanship may not rise to the level of a material change in circumstances" and "a custodial parent's change in attitude is not necessarily sufficient to constitute a material change." He also argues that limiting excessive communication is not a material change in circumstances, citing Anderson v. Thomas , 2013 Ark. App. 653, 2013 WL 5964473, in which this court reversed a finding of material change in circumstances after concluding that "the record did not demonstrate a complete inability of the parties to communicate; it rather showed that Brandy was unhappy with not being able to repeatedly contact Gregg and get immediate responses." Id. at 6.
This case, from a legal perspective, presents a textbook judgment call by the circuit court. In its order, the court found, and the parties do not dispute, that they "interacted seamlessly and frequently regarding the children and the children's needs" after their divorce in October 2013. The court also found that after Schreckhise's remarriage in July 2014, a "significant shift" in the parties' communication and ability to cooperate began to emerge. The court found that the changes in communication and interaction requested by Schreckhise were to the detriment of the children and constituted a material change of circumstances. As we recited earlier, there are no cases in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as great a weight as those involving minor children, and in this case, the circuit court emphasized that its decision was based "in large part on its personal observation in the courtroom, hearing the witnesses' tone of voice, witnessing their body language, seeing their reactions to the questions, seeing how they reacted to the testimony of other witnesses."
Change-of-custody decisions must be based on the particular facts and circumstances of each case in relation to the standard of the best interest of the child. Hudgens v. Martin , 2009 Ark. App. 462, 2009 WL 1553631. In addition, credibility determinations are left to the circuit court, and we will not reweigh the evidence. Glisson v. Glisson , 2018 Ark. App. 21, 538 S.W.3d 864. Given these standards, we must affirm the circuit court's finding that a material change in circumstances occurred.
For his second point, Schreckhise argues that if a material change in circumstances did occur, it was not in the children's best interest to place primary custody with Parry. Schreckhise acknowledges that although the court awarded custody to Parry, the joint-custody schedule between the parties remained the same. Nevertheless, he argues that it was not in the children's best interest to change custody and that Parry obtained custody to facilitate her relocation to the Pacific Northwest.
*788 In its order, the circuit court found that Parry had consistently advocated for a free flow of information between her and Schreckhise, had fostered an open relationship between the children and Schreckhise, and had kept her communication with Schreckhise focused on the children. In contrast, the circuit court found that Schreckhise had put his new wife and their marriage ahead of the needs of the children and had not acted in the children's best interest. Based on these findings and that the court made no actual change in the amount of time that each parent spends with the children, we affirm. That Parry may (or may not) seek to relocate at some point is legally not germane at this point because the issue was not addressed and decided by the circuit court. Consequently, we need not address it either.
Affirmed.
Abramson and Murphy, JJ., agree.

The parties are both professors in the same department at the University of Arkansas, and their offices are next to each other.

The parties live approximately two blocks apart, in part because they initially agreed that it would be good for the children.

On that day, while the minor children were present, Garrison banged his fist on the table and threw a Christmas "popper" on the floor. After Schreckhise asked Garrison to leave, he grabbed two pies, threw them on the floor, broke an urn, then left the house.

Parry originally cross-appealed the circuit court's order, but her motion to dismiss her cross-appeal was granted by this court on 5 October 2018.