Cite as 2019 Ark. App. 395

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-18-484

|  |  |  |
|---|---|---|
| MIA ELLINGTON | APPELLANT | **Opinion Delivered:** September 18, 2019 |
|  |  | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION [NO. 60DR-13-2464] |
| V. |  |  |
| BERNARD ELLINGTON | APPELLEE | HONORABLE TIMOTHY DAVIS FOX, JUDGE |
|  |  | REVERSED |

## MIKE MURPHY, Judge

Mia Ellington appeals the decision of the Pulaski County Circuit Court giving her ex-husband, Bernard Ellington, primary custody of the parties' two children. On appeal, Mia argues that there was no material change in circumstances to warrant a change of custody, a change of custody is not in the children's best interest, and it was inappropriate to be ordered to pay child support when the children are in her care a majority of the time. We agree and reverse.

Mia and Bernard were married in 2007 and divorced in 2014. There were two children born of the marriage. At the time of the divorce, a decree was entered awarding the parties joint legal custody, with Mia having sole physical custody subject to Bernard's visitation. That decree further provided that the children would reside with Mia the majority

of the time and that Mia would be responsible for "managing the day-to-day business regarding the children's schedule, activities, and healthcare."

On March 8, 2017, Bernard filed a motion for sole physical and legal custody, or in the alternative, for joint physical custody. Mia responded and then filed a motion for contempt and change in the visitation schedule. The court entered a temporary agreed order, and a hearing was held on the competing motions on February 7, 2018. At the conclusion of the hearing, the court changed sole physical custody and decision-making authority from Mia to Bernard and ordered Mia to pay child support. Despite this change, the visitation schedule remained the same, with Mia having the children more than Bernard.

The order listed the following in support of its finding a material change of circumstances:

> a. [Mia], as the custodial parent, repeatedly exercised poor judgment in establishing the living arrangements for the minor children;

> b. [Mia] failed to provide for the appropriate degree of hygiene and cleanliness that was available to the minor children given the parties social economic circumstances;

> c. [Mia] failed to be proactive in communicating with the noncustodial parent; and

> d. [Mia] repeatedly failed to provide appropriate adult supervision to ensure the safety and well-being of the minor children.

The order further provided that "[t]he children will maintain the same visitation schedule with the parties, but [Bernard] will be responsible for managing the day-to-day business regarding the children's schedules, activities, and healthcare." Mia was ordered "to pay the chart amount of support according to the Arkansas Family Support Chart for each child," and an order setting out what that actual amount is was entered three days later. Mia

2

now appeals. For purposes of discussion, Mia's arguments can best be organized into three sections: (1) there was no material change; (2) a change in custody is not in the best interest of the children; and (3) an award of child support was clear error. Because we agree with Mia that there was not a material change in circumstances, we need not address the other two issues.

Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *Schreckhise v. Parry*, 2019 Ark. App. 48, at 5–6, 568 S.W.3d 782, 786. Generally, courts impose more stringent standards for modifications of custody than they do for initial determinations of custody. *Id.* The reason for requiring more stringent standards for modifications than for initial custody determinations is to promote stability and continuity in the life of the child and to discourage repeated litigation of the same issues. *Id.*

The party seeking modification of the custody order has the burden of showing a material change in circumstances. *Id.* To change custody, the circuit court must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, it must then determine who should have custody with the sole consideration being the best interest of the children. *Id.* In reviewing child-custody cases, we consider the evidence de novo, but will not reverse a circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Id.* Whether the circuit court's findings are clearly erroneous turns largely on the credibility of witnesses, and we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Ford v. Ford*,

347 Ark. 485, 65 S.W.3d 432 (2002). There are no cases in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as great a weight as those involving minor children. *Schreckhise*, *supra*.

The findings of the circuit court supporting the material change of circumstances are clearly against the preponderance of the evidence. Regarding the first point, that Mia had exercised poor judgment in establishing the living arrangements for the children, there was testimony at trial that Mia and the children had moved at least four times in a three-year period, and in 2016, she and her children moved into a three-bedroom apartment with her boyfriend, his two children, and the boyfriend's mother. The four children, two boys and two girls all under ten, shared one bedroom and two beds. There was also testimony that for a one- or two-week period between moving out of her boyfriend's and getting her own place, she and her children stayed with her friend, Janelle, and Janelle's two children. Mia's children slept on the living-room floor at this time. But, by the time of the hearing, Mia, the children, and Mia's elderly father had lived at a new condominium for over a year. So while Mia may have demonstrated some poor decision making in the past, it had been remedied well before the hearing. *See, e.g.*, *Lawhead v. Harris*, 2010 Ark. App. 77, at 8, 374 S.W.3d 71, 75 (holding there was no material change when alleged problems resolved six months before the hearing).

Regarding the finding of inadequate hygiene, Bernard testified that he was concerned the children were not being bathed enough, had to take baths with other children who were not their siblings, and that his daughter would come home from Mia's house with unkempt hair. Again, *Lawhead* is relevant. At the hearing, Mia testified that the children are

4

clean, they get bathed at least every other night—more if they're dirty—and she quit bathing the children with her boyfriend's children when Bernard asked. So again, the majority of Bernard's concerns were addressed prior to the hearing, and a child returning to one parent's care from the other's with messy hair is not a material change in circumstances sufficient to warrant a change in custody. We agree with Mia that this point does not support a material-change finding.

Likewise, the final two points regarding a failure of proactive communication by Mia and the children being inadequately supervised do not support a material-change finding on this record. Bernard cited one incident in which Mia did not text him back for a week about signing their daughter up for tutoring, and another where their son hit his head on the fence at the park. Bernard also states that Mia was not forthcoming about her "move" to Conway. Regarding supervision, Bernard took umbrage that (1) sometimes the children were left with Mia's father during the day, and he was allegedly in declining health at the time; (2) the time when their son hit his head at the park he was unsupervised; and (3) the children got a ride home with a schoolmate one day when it was raining. These are, at most, isolated incidents of petty complaints or otherwise complaints of problems resolved by the time of the hearing. And, while it is true that certain factors, when examined in the aggregate, may support a finding that a change in custody is warranted where each factor, if examined in isolation, would not, we hold that none of the factors in this case, either alone or in combination, constituted a material change sufficient to warrant a modification of custody. *See Vo v. Vo*, 78 Ark. App. 134, 139, 79 S.W.3d 388, 391 (2002).

Because we hold that there was no material change in circumstances sufficient to support a change of custody, we need not address the best-interest finding. Further, because the change of custody is reversed, the award of child support is likewise reversed.

Reversed.

GRUBER, C.J., and HARRISON, J., agree.

*Aimie Lockwood*, for appellant.

*Taylor & Taylor Law Firm, P.A.*, by: *Andrew M. Taylor* and *Tasha C. Taylor*, for appellee.