Cite as 2020 Ark. App. 490

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-20-42

|  |  |  |
|---|---|---|
| MATHEW INGLE | | **Opinion Delivered:** October 28, 2020 |
| | APPELLANT | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT |
| V. | | [NO. 63DR-19-457] |
| CALLIE DACUS | | |
| | APPELLEE | HONORABLE KEN CASADY, JUDGE |
| | | AFFIRMED |

## BART F. VIRDEN, Judge

Appellant Mathew Ingle appeals from the Saline County Circuit Court's order denying his motion to modify custody of his son, D.G.I. Ingle argues that the trial court erred in failing to find a material change in circumstances when the custodial parent, appellee Callie Dacus, relocated to the same general area where he is living, thus making joint custody possible. Ingle also argues that the trial court erred in denying his motion on the basis of the court's perception of "fairness" to Dacus instead of D.G.I.'s best interest. We affirm.

I. *Background*

Dacus gave birth to D.G.I. in 2009; however, the parties were never married to each other. Dacus sued to establish paternity and for child support in 2010. Ingle began paying child support and petitioned for visitation and later for joint custody. In November 2011, while both parties were living in Baxter County, the parties reached an agreement that Dacus would have

sole care and custody of D.G.I. subject to Ingle's visitation rights.[1] In March 2012, the trial court granted Ingle temporary custody of D.G.I. while Dacus attended the Arkansas State Trooper Academy. The order expired June 28, 2012, when Dacus graduated from the academy. In October 2012, the trial court entered a temporary order modifying the "Agreed Order" because, after graduating from the academy, Dacus was assigned to a troop in Fort Smith, Arkansas. In the order, the trial court reaffirmed that Dacus had sole care and custody of D.G.I. but modified Ingle's visitation to omit a Wednesday visit because it was no longer practical due to distance.

On April 4, 2019, Ingle, who was then living in Saline County, filed a motion to modify custody based on a material change of circumstances in that Dacus had moved to Saline County in 2018 or 2019 and that D.G.I. was being cared for almost exclusively by his maternal grandmother in Fort Smith. Ingle pointed out that he is married and has a daughter near D.G.I.'s age and that the two are close. Ingle requested joint custody and alleged that "[t]he parties are able to coparent and work together for the benefit of the minor child, as evidenced by their flexibility over the past seven years."

Dacus explained in her response that she had left D.G.I. with his grandmother, who lived with them, for two months so that D.G.I. could finish school in Fort Smith. She alleged that Ingle has a full-time job with the Little Rock Police Department, has part-time off-duty employment, and attends night classes for law school. Dacus further asserted that Ingle is fifteen months in arrears on his child-support obligation.

---

[1]The "Agreed Order" was not entered until July 10, 2012.

Ingle then amended his motion to seek full primary legal and physical custody of D.G.I. Ingle alleged that the parties had been following the October 2012 temporary order since its entry but "have kept a flexible schedule to accommodate both parties' work schedules and to ensure that the minor child spends time with both parents." Ingle alleged that since moving to central Arkansas, Dacus leaves D.G.I. with his grandmother rather than with Ingle and sees him only on weekends. Ingle asserted that he is "the parent more willing to coparent and ensure that the minor child has a continuing and strong relationship with the other parent and her family."

Dacus responded that D.G.I. is now living with her in Saline County. Dacus stated that D.G.I., after finishing school, had stayed with his grandmother in Fort Smith to finish baseball season with his friends and that she (Dacus) was able to spend from Wednesday to Sunday with her son while he was still in Fort Smith. Dacus pointed out that Ingle had only ever attended two of D.G.I.'s games "so it's not necessarily surprising that [Ingle] doesn't value the minor child's commitment to his extracurricular activities or Ms. Dacus's commitment to the minor child's interests." Dacus asserted that she had moved to Saline County so that D.G.I. would be closer to Ingle and points out that Ingle's statement that only he is willing to coparent is in direct conflict with his original motion. She stated that Ingle's work and school schedule will not allow him to effectively parent in a joint custodial arrangement, much less a primary custodial arrangement. A hearing was held on Ingle's motions.

II. *Hearing Testimony*

Ingle testified that he has been living with his wife and daughter in Bauxite since 2013. Ingle testified that he works from 8:00 a.m. to 4:00 p.m. at the Little Rock Police Department, that his schedule is very flexible, and that he no longer has patrol duties. He said that he attends

law school Monday through Thursday from 5:45 p.m. to 8:30 or 9:00 p.m. and that he plans to graduate at the end of 2020. He stated that, although he knew Dacus had applied for a position with the Arkansas State Police in late 2018, he did not learn that she had moved to Saline County until he saw a post on social media. Ingle testified that Dacus did not discuss with him leaving D.G.I. with his grandmother in Fort Smith.

Ingle stated that the current arrangement with his visitation has been going well. He stated that while D.G.I. lived in Fort Smith, he exercised his visitation and occasionally came for school events. Ingle explained that it is a three-hour drive and that some events lasted only thirty minutes. He said that over the past seven years, he had attended approximately three of D.G.I.'s baseball games. He said that Dacus informed him of activities like Donuts with Dad but that sometimes it was too late for him to put in a request for leave and that, while he worked as a patrolman, his schedule was not very flexible. Ingle said that, before the litigation began, he and Dacus communicated well and made arrangements if one of them needed to change the schedule. He said that they had been coparenting for seven years with no issues, except Dacus would not agree to joint custody.

Ingle said that Dacus did not consult him when she could not enroll D.G.I. at Parkway Elementary.[2] He said that Springhill Elementary, where D.G.I. is enrolled, is five miles from Dacus's house and about ten miles from his. He said that he had D.G.I. the first week of school and that he and Dacus had arranged to drop him off together on his first day. Ingle said that

---

[2]Shortly before the hearing on Ingle's motion to modify custody, the parties had a hearing to address whether D.G.I. would attend a Bauxite school or Parkway Elementary in Bryant. The trial court ruled that Dacus, as the custodial parent, would choose the school for the 2019–2020 year. D.G.I. was ultimately enrolled at Springhill Elementary because, by the time the trial court made its decision, Parkway Elementary was full, and D.G.I. was placed on a waiting list.

when he picked up D.G.I. after school, D.G.I. had said he liked the new school and had made friends. Ingle said that if he was D.G.I.'s primary custodian, he would be sure to get him enrolled in school on time and make decisions that are in D.G.I.'s best interest. He said that he would keep Dacus informed and involve her in all decisions. He said that he also intended to involve D.G.I.'s grandmother. Ingle testified that he is very happy that D.G.I. now lives in Saline County.

Dacus testified that she transferred to Little Rock in January 2019 and that she bought a house in March. When she initially moved to Little Rock, she was living in barracks. She admitted that she did not involve Ingle with her decisions to move and leave D.G.I. with his grandmother. She said that she has troop school once a year and that it lasts four months. She said that the schedule is always changing and that there are four phases in which she works as early as 4:30 a.m. and stays as late as between 10:30 p.m. and midnight. Dacus said that D.G.I.'s grandmother cares for him while she is at work, that her coworkers are flexible with her schedule, and that she has family in central Arkansas.

Dacus said that she chose to live in Saline County so that D.G.I. could spend more time with his father and that she would not be opposed to having D.G.I. stay with Ingle during those early mornings and late nights that she has to work. Dacus said that she does not always inform Ingle when she is traveling without her son and that she gives Ingle notice of D.G.I.'s events as soon as she learns of them. She said that she has no issues with his parenting and that they have worked well together for the past seven years.

Dacus said that she is not okay with Ingle having equal time because he had not been around much and that it would affect D.G.I.'s routine. She said, however, that Ingle had put in a lot of effort since they moved to Saline County. She said that she has no problem with

5

Ingle's wife helping with their son. She said that she would be happy to extend Ingle's visitation, have him attend all school activities, and give him an extra day or two or a dinner night. She said that the relocation had been 100 percent better for her and D.G.I.

In denying Ingle's motion to modify custody, the trial court wrote,

2. The Court finds that there has not been a material change of circumstances warranting a change of custody. Although [Ingle] presented evidence of [Dacus]'s relocation from Fort Smith, Arkansas to Bryant, Arkansas, the relocation was for [Dacus]'s betterment, including improvements in employment and [Dacus]'s household. Further, the parties' minor child now resides in the same county as [Ingle]. Accordingly, [Dacus]'s relocation is in the child's best interest.

3. The Court finds that it would be unfair to punish [Dacus] by modifying custody based upon her relocation to Saline County where the child's father lives.

The trial court then went on to find that there had been a change in circumstances warranting a modification of Ingle's visitation schedule to allow him more time with D.G.I.

## III. *Standard of Review*

In reviewing child-custody cases, we consider the evidence de novo but will not reverse a trial court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Ellington v. Ellington*, 2019 Ark. App. 395, 587 S.W.3d 237. Because the question of whether the trial court's findings are clearly erroneous turns largely on the credibility of witnesses, we give special deference to the superior position of the trial court to evaluate the witnesses, their testimony, and the child's best interest. *Id*. There are no cases in which the superior position, ability, and opportunity of the trial court to observe the parties carry as great a weight as those involving minor children. *Id*.

## IV. *Child-Custody Modifications*

Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *Schreckhise v.*

6

*Parry*, 2019 Ark. App. 48, 568 S.W.3d 782. Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. *Id*. The reason for requiring more stringent standards for modifications than for initial custody determinations is to promote stability and continuity in the life of the child and to discourage repeated litigation of the same issues. *Id*.

The party seeking modification of the custody order has the burden of showing a material change in circumstances. *Fudge v. Dorman*, 2017 Ark. App. 181, 516 S.W.3d 306. To change custody, the trial court must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, it must then determine who should have custody with the sole consideration being the best interest of the children. *Id*. Change-of-custody decisions must be based on the particular facts and circumstances of each case in relation to the standard of the best interest of the child. *Id*. Determining whether there has been a change of circumstances requires a full consideration of the circumstances that existed when the last custody order was entered in comparison to the circumstances at the time the change of custody is considered. *Id*.

V. *Discussion*

Ingle argues that the trial court erred by treating this as a relocation case. In *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003), the Arkansas Supreme Court held that relocation alone is not a material change in circumstances and pronounced a presumption in favor of relocation for custodial parents with primary custody. *Id*. The noncustodial parent has the burden to rebut the relocation presumption. *Id*. We agree that this is not a relocation case. Dacus was not seeking permission to relocate with D.G.I. to another area of the state or country and away from Ingle. Moreover, there was no dispute that the move to Saline County was in

7

D.G.I.'s best interest. In other words, Ingle would have had no desire to rebut a presumption in favor of Dacus's moving closer to him with D.G.I. Further, there is no indication that the trial court treated this as a relocation case, other than an unnecessary reference that the move was for Dacus's "betterment." Even with true relocation cases, the custodial parent does not have to prove any advantage to the move. *Hollandsworth*, *supra*. We conclude that this is a modification-of-custody case rather than a relocation case.

Ingle argues that the trial court did not undertake a material–change–of–circumstances analysis. He further contends that he proved a material change in circumstances because Dacus's move made joint custody "a real possibility" and that joint custody is favored in Arkansas.[3] We hold that the trial court applied the correct analysis here. The trial court found that Dacus's relocation was a change but concluded that it was not a change sufficiently material to warrant modifying custody. Moreover, the possibility of joint custody was not a new circumstance. Both parents were living in Baxter County when they reached an agreement that Dacus would have sole primary custody of D.G.I.

Ingle further argues that Dacus relies heavily on her mother to raise D.G.I., that Dacus does not include him in decision making or D.G.I.'s activities, and that D.G.I. is seven years older since the last custody order. Ingle also points out that he has "remarried" and improved his own situation. There is no indication that the trial court did not take all of these circumstances into consideration in denying the request to modify custody. Here, the evidence shows that Dacus and Ingle have effectively coparented D.G.I. for the past seven years, that they have sought to accommodate each other's schedules, and that they, together, took D.G.I.

---

[3]In an action for divorce, an award of joint custody is favored in Arkansas. Ark. Code Ann. § 9–13–101(a)(1)(A)(iii) (Supp. 2019).

to his first day of school at Springhill Elementary. Dacus testified that she is willing to have Ingle care for D.G.I. instead of the grandmother when she works early or stays late. Both parents indicated through their pleadings and testimony that the last custody order was working well. We hold that the trial court did not clearly err in finding that there was no change of circumstances sufficiently material to warrant a modification of custody.

Next, Ingle argues that the trial court did not consider D.G.I.'s best interest and instead found that modifying custody would not be fair to Dacus. He asserts that fairness to the parents is not a proper consideration in a custody determination. He is correct. Custody awards are not made to punish or reward either parent. *Black v. Black*, 2015 Ark. App. 153, 456 S.W.3d 773. We think that the trial court merely made an observation that a custodial parent should not risk losing sole custody of a child when he or she moves closer in proximity to the noncustodial parent. In any event, in light of our conclusion that Ingle failed to meet the threshold requirement of establishing a material change of circumstances, we need not address the remainder of his best-interest argument. *Fudge, supra*.

Affirmed.

GLADWIN and WHITEAKER, JJ., agree.

*Mann & Kemp, PLLC*, by: *Angela Mann*, for appellant.

*Alexander Law Firm*, by: *Daniel C. Brock*, for appellee.

9