Cite as 2021 Ark. App. 181

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-20-443

|  |  |
|---|---|
| PATRICK MINAHAN<br><br>APPELLANT<br><br>V.<br><br>RACHEL LEIGH WILLIAMS<br><br>APPELLEE | **Opinion Delivered** April 21, 2021<br><br>APPEAL FROM THE POPE COUNTY CIRCUIT COURT [NO. 58DR-09-917]<br><br>HONORABLE DENNIS CHARLES SUTTERFIELD, JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Patrick Minahan appeals the order entered by the Polk County Circuit Court denying his motion to change custody. On appeal, he contends that the circuit court erred as a matter of law by requiring a heightened burden of proof with regard to the best-interest requirement and that it clearly erred in finding that it was in the best interest of his daughter, VM, to remain in the custody of her mother, Rachel Leigh Williams. We affirm.

Williams was unmarried when she gave birth to VM on September 27, 2009. On December 28, Minahan filed a paternity complaint against Williams claiming that a DNA test confirmed that he is VM's father and seeking to establish paternity and visitation with her. On November 22, 2010, the circuit court entered an order accepting a custody and visitation

agreement reached by the parties wherein Williams was granted primary custody of VM, and Minahan was awarded visitation and directed to pay child support.[1]

On February 5, 2019, Minahan filed a motion to change custody. Minahan alleged that a material change in circumstances had occurred and that he should be granted full custody of VM. Minahan also requested that the circuit court order Williams to undergo a psychological evaluation and drug testing. On February 7, the circuit court entered an order directing Williams to be drug tested. Williams was drug tested on February 8, and the results showed that she tested positive for marijuana. On February 13, Minahan filed an emergency motion seeking temporary custody. Williams responded stating that she has a valid medical-marijuana physician-written certification, she was awaiting her medical-marijuana card, and that her marijuana use has not had a negative impact on VM. After a hearing, the circuit court entered a temporary order on March 13 denying Minahan's emergency motion and ordering Williams to refrain from using marijuana until she obtained a legal medical-marijuana card.

Thereafter, the parties filed multiple competing motions. Minahan moved to compel discovery and requested that Williams undergo a psychological evaluation, that there be a custody evaluation, and that an attorney ad litem be appointed. Williams moved to modify child support. The circuit court later entered orders directing both parties to undergo psychological examinations with Dr. Dawn Doray, appointing ad litem Sarah Capps to represent VM, and compelling Williams to provide answers to discovery.

---

[1]There was one contested issue resolved in the court's order: the court found that it was in the best interest of VM to change her surname to Minahan.

Williams failed to comply with the court's discovery order, and Minahan moved for sanctions. On September 12, the circuit court entered an order granting Minahan's motion, striking Williams's pleadings, and entering a default judgment against her on the issue of whether a material change in circumstances had occurred. The court reserved the issue of VM's best interest. The court further found that Williams was precluded from calling her counselor as an expert witness at the final hearing.

On January 22, 2020, Minahan filed a motion to bifurcate the proceedings. He asked that his motion to change custody be tried first and that Williams's motion to modify child support be tried thereafter if the circuit court awarded custody to her. The circuit court granted the motion and limited the hearing to the issue of custody. The hearing was held on January 30–31. Nine witnesses testified, including Williams, Minahan, Dr. Doray, and the attorney ad litem. The circuit court requested posttrial briefs from the parties and took the matter under advisement.

On May 6, the circuit court entered an order that included a Rule 54(b) certificate. In its order, the circuit court referred to its September 12 order wherein it had sanctioned Williams and entered a default judgment against her on the issue of whether a material change of circumstances had occurred. The circuit court then found that it was in VM's best interest that Williams retain sole legal custody and that Minahan have visitation. In denying Minahan's motion to modify custody, the court adopted and incorporated Williams's posttrial brief as a basis for its findings of fact. Minahan timely appealed from this order.

In reviewing child-custody cases, we consider the evidence de novo but will not reverse a circuit court's findings unless they are clearly erroneous or clearly against the preponderance

3

of the evidence. *Fudge v. Dorman*, 2017 Ark. App. 181, at 2, 516 S.W.3d 306, 309. Deference to the circuit court is even greater in cases involving child custody, as a heavier burden is placed on the circuit court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Id.*, 516 S.W.3d at 309.

Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *Id.* at 3, 516 S.W.3d at 309. A judicial award of custody will not be modified unless it is shown that there are changed conditions that demonstrate that a modification of the decree will be in the best interest of the child. *Id.*, 516 S.W.3d at 309. Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. *Id.*, 516 S.W.3d at 309. The reasons for requiring more stringent standards for modifications than for initial custody determinations are to promote stability and continuity in the life of the child and to discourage repeated litigation of the same issues. *Id.*, 516 S.W.3d at 309. In order to change custody, the circuit court must first determine that a material change in circumstances has occurred since the last order of custody; the party seeking modification has the burden of showing a material change in circumstances. *Id.*, 516 S.W.3d at 309. Determining whether there has been a change of circumstances requires a full consideration of the circumstances that existed when the last custody order was entered in comparison to the circumstances at the time the change of custody is considered. *Id.*, 516 S.W.3d at 309. If that threshold requirement is met, the circuit court must then determine who should have custody, with the sole consideration being the best interest of the children. *Id.*, 516 S.W.3d at 309.

4

Minahan's first point on appeal is that the circuit court erred in requiring him to prove best interest with a heightened burden of proof. To fully understand his argument, some context is helpful.

During the hearing, the circuit court sought clarification of the issues being presented. Counsel for Minahan reminded the court that it had previously entered a default judgment against Williams on the issue of a material change of circumstances and that the only issue before the court was whether modification of the custody order was in VM's best interest. Williams's counsel agreed that Williams had been "sanctioned with regard to change of circumstances" but argued that "because it's a modification, there is a heightened level of looking at best interest of the child, if changes [to the custody order] are made." Minahan's counsel disagreed, stating that while an initial custody decision requires only a best-interest finding, to modify a custody order, a two-part analysis is required: a material change of circumstances and a best-interest finding. Minahan's counsel argued that there is no heightened burden relating to the best-interest finding in a modification-of-custody case. Minahan's counsel also argued that because a default judgment on the material-change-of-circumstances prong had been entered, the two-part analysis in this case was "shortened" to just the best-interest determination. Thereafter, the following colloquy occurred:

| COURT: | Right. And so basically, we're looking at the Court looking closely at best interest, which the Court would do anyway. |
| WILLIAMS'S COUNSEL: | Yes, sir. |
| MINAHAN'S COUNSEL: | That's correct. |
| COURT: | I'm always going to be heightened with the best interest. I'll tell you that. |

5

| | |
|---|---|
| MINAHAN'S COUNSEL: | Yes. |
| WILLIAM'S COUNSEL: | Yeah, I'm not sure it will be short, but it – |
| MINAHAN'S COUNSEL: | I thought you said shortened in terms of --didn't you say it's shortened from -- we don't have the two part. It's shortened to just the one part. |
| COURT: | It's not -- right. |
| MINAHAN'S COUNSEL: | Yeah. He said shortened, not short. |
| COURT: | It's not a two-part analysis. |
| MINAHAN'S COUNSEL: | Right. |
| COURT: | It comes down to best interest. |
| WILLIAMS'S COUNSEL: | Yeah, I think it's a word clarification. I said rigid, you said short. |
| COURT: | Okay. But at any rate, I think we're all on the same page. |
| MINAHAN'S COUNSEL: | Yes, sir. |
| COURT: | We all understand where we're at. We're looking at best interest of the child here and not having to look at material changes in circumstances. |

In support of his argument that the circuit court required him to prove best interest by a heightened burden of proof, Minahan cites Williams's counsel's request that the court apply a heightened burden of proof to the best-interest requirement along with the circuit court's statement, "I'm always going to be heightened with the best interest."

The colloquy set forth above demonstrates that there was some uncertainty at the hearing about the issue presented in this modification-of-custody case, that Williams's counsel lobbied for a heightened level of proof on the best-interest issue, and that the court did state at one point that "I'm always going to be heightened with the best interest." To the extent that

the court's statement can be interpreted as the application of a heightened burden of proof on the best-interest issue, we note that within that same exchange on two subsequent occasions, the court recognized the correct legal standard by stating that the issue came down to the best interest of the child, without mentioning a heightened burden of proof.

Also, even if the circuit court had not stated the correct legal standard at the hearing, in its final order, it applied the best-interest standard without mentioning the application of a heightened burden of proof: "The Court finds that [Williams] has shown by the evidence presented a trial that it is in the best interest of the minor child that [she] retain the sole, legal custody of the minor child." Pursuant to Arkansas Supreme Court Administrative Order No. 2(b)(2), an oral order announced from the bench does not become effective until reduced to writing and filed. *Qualheim v. Roush*, 2019 Ark. App. 83, at 11, 572 S.W.3d 9, 15 (citing *Baxley v. Baxley*, 86 Ark. App. 200, 204, 167 S.W.3d 158, 160 (2004)). This rule eliminates or reduces disputes between litigants over what a circuit court's oral decision in open court entailed. *Id.* at 11–12, 572 S.W.3d at 15.

In sum, the circuit court on two occasions correctly stated that the issue presented was a best-interest determination without mentioning the application of a heightened burden of proof, and the court's order likewise included a best-interest finding without reference or mention of a heightened burden. Therefore, we hold that Minahan failed to establish that the court applied an incorrect legal standard of best interest. We affirm on this point.

Minahan's second point on appeal is that the circuit court clearly erred in finding that it was in VM's best interest to remain in Williams's custody. He argues that the evidence overwhelmingly demonstrates that Williams is an unfit parent whose myriad of problems

7

negatively affect VM. Minahan points to evidence that Williams has been using—and continues to use—marijuana in her home while VM is present, that she admitted she illegally consumed marijuana for a one-year period, that she purchased the marijuana from a drug dealer and stored it in her home, and that she did not attempt to acquire a medical-marijuana prescription or card until after she had failed a court-ordered drug test in this case. He also cites evidence that Williams has a long history of suffering from mental-health issues, including depression, PTSD, severe anxiety, and suicidal ideation and that she voluntarily discontinued therapy for her conditions.

Minahan also relies on evidence that while in Williams's custody VM had an exceptional number of absences and tardies at school, which have caused VM to experience psychosomatic stomach ailments. Minahan describes three incidents when Williams was late picking VM up from school. He claims the testimony of school employees shows that these incidents led to bizarre outbursts by Williams that were directed at the school employees and that one of these incidents was witnessed by VM and caused her to be visibly upset.

Finally, Minahan points to evidence of Williams's lack of stable employment. He argues that the evidence shows that since 2015, Williams has worked at five different jobs for less than twenty-three months. She was terminated from one job for tardiness, she worked for one employer for only two days, and she has been working at her current job only six weeks.

Minahan argues that Williams's illegal drug use, her failure to obtain treatment for her mental-health issues, her indifference to VM's school attendance coupled with the turmoil she has caused at VM's school, and her lack of stable employment have had a tremendous negative impact on VM. In contrast, he argues that the evidence demonstrates that he is a loving father

who provides a stable, loving home for VM. He cites evidence that the attorney ad litem recommends that he have primary custody of VM and that Dr. Doray opined that the parties should either share joint custody of VM or that Minahan should have primary custody of her.

Williams's summary of the evidence paints a different picture. She strongly disputes the allegation that she is an unfit parent. She points out that she has had primary custody of VM since her birth in 2009 and that VM is a happy, well-cared for child. With regard to her mental-health issues, Williams testified that she has suffered from sexual, mental, and physical abuse by multiple people that occurred when she was a child and as an adult. Williams also testified that she was verbally abused and raped by Minahan, which Williams said resulted in her becoming pregnant with VM. She claims she has made improvements over the years in addressing her issues related to the trauma and confronting her abusers; however, this custody proceeding has caused her to have a setback. She also testified that dealing with her mental-health issues while also navigating the custody lawsuit and attempting to coparent and communicate with Minahan has been very stressful. Yet Williams believes she has done a good job as VM's primary custodian because VM is performing well in school, she is a happy child, and she has a good and consistent relationship with Minahan, which Williams claims she has encouraged and fostered over the years. Dr. Doray testified that VM is a well-mannered, positive child who loves both her parents; that VM thinks she spends "pretty even" time with her parents; and that VM wants the current custody arrangement to stay in place. VM also reported to the attorney ad litem that she wanted the current custody arrangement to remain the same. Upon questioning by the circuit court, Dr. Doray "agree[d] completely" with the circuit court that changing VM's current custody arrangement would not be insignificant.

9

Williams admitted that she discontinued mental-health therapy for a time because she could not afford it due to the costs of the custody proceeding. She added that she attended support groups during that time and that she is currently receiving therapy. Williams refutes Minahan's drug-use accusation. She claims her doctor's notes consistently show that she takes medication prescribed to her in the proper manner. While she admitted she illegally obtained marijuana for a year, Williams testified that she now has a prescription for medical marijuana to treat her PTSD and nausea. The circuit court questioned Williams at length on this topic, and she answered that neither her mental-health issues nor her use of medical marijuana impairs her ability to parent VM.

Williams also addresses the allegations surrounding VM's school attendance and tardiness along with the incidents that occurred at her school. She concedes that VM's attendance and tardy numbers are not ideal but that they have not interfered with VM's grades. Williams disputes Minahan's claims that she behaved in a "bizarre" manner several times at VM's school. Williams argues that while Minahan presented witnesses who testified that on one occasion she had the smell of alcohol on her breath and that she was yelling and making outlandish demands concerning VM, the school employees allowed Williams to leave with VM and did not call the police. Williams also claims that she told the school employees that she has PTSD and was having a panic attack. Finally, Williams argues that the mother of VM's best friend witnessed this particular incident and testified that she did not hear Williams yelling.

Finally, Williams contends that the evidence shows that her home environment has improved since the 2010 custody order was entered. She testified that she has a solid marriage with Craig Witcher to whom she had been married for two-and-a-half years. Dr. Doray's

report that states Witcher provides not only financial and employment security for VM but also comfort stability. Witcher said that his marriage to Williams is close, affectionate, mutually supportive, and understanding. He agreed that the custody proceeding had caused stress to his family—especially financially. Finally, Witcher testified that VM is a happy, active, fun child and that she has a good relationship with his nine-year-old son from a prior relationship who visits every other weekend.

As summarized above, the circuit court was presented with the classic "he said-she said" scenario, and Minahan's and Williams's interpretation of the evidence could not be more different. After considering all the evidence and both parties' interpretation of that evidence, the circuit court denied Minahan's motion to change custody, finding that it is in VM's best interest to remain in Williams's custody. In reaching this conclusion, the court expressly stated in its order that "[d]uring the course of the two-day trial, the [c]ourt paid careful attention to the witnesses and their testimony and determined each witnesses' credibility." The court also stated in its order that it adopted and incorporated Williams's posttrial brief "word for word" as a basis for its findings of facts. Clearly, the circuit court believed Williams, her witnesses, and her interpretation of the evidence in determining that it was in VM's best interest to remain in Williams's custody.

Because the question of whether the circuit court's findings are clearly erroneous turns largely on the credibility of witnesses, we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Schreckhise v. Parry*, 2019 Ark. App. 48, at 5–6, 568 S.W.3d 782, 786. There are no cases in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as

great a weight as those involving minor children. *Id.*, 568 S.W.3d 782, 786. Change-of-custody decisions must be based on the particular facts and circumstances of each case in relation to the standard of the best interest of the child. *Id.* at 8, 568 S.W.3d at 787. Credibility determinations are left to the circuit court, and we will not reweigh the evidence. *Id.*, 568 S.W.3d at 787. Given these standards, we hold that the circuit court did not clearly err in denying Minahan's motion to change custody.

Affirmed.

KLAPPENBACH and WHITEAKER, JJ., agree.

*Taylor & Taylor Law Firm, P.A.*, by: *Andrew M. Taylor*, *Tasha C. Taylor*, and *Jennifer Williams Flinn*, for appellant.

*Liberty-Ellington Law & Mediation, PLLC*, by: *LynMarie S. Liberty-Ellington*, for appellee.