Cite as 2022 Ark. App. 4

# ARKANSAS COURT OF APPEALS
DIVISION IV
**No.** CV-21-186

| | | |
|---|---|---|
| SARAH BEVERLY | | **Opinion Delivered** January 12, 2022 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, THIRTEENTH DIVISION [NO. 60DR-16-1543] |
| V. | | |
| AUNDRA MURPHY | | |
| | APPELLEE | HONORABLE W. MICHAEL REIF, JUDGE |
| | | AFFIRMED |

## BART F. VIRDEN, Judge

Sarah Beverly appeals the Pulaski County Circuit Court's decision to change primary custody of AM (03/10/16) to his father, Aundra Murphy. We affirm.

### I. *Relevant Facts*

On April 18, 2016, Aundra Murphy filed a petition for paternity of AM, and after DNA testing confirmed Murphy was AM's father, the court entered the decree of paternity. The court awarded joint custody to the parents with Beverly as the primary physical custodian. The parents shared equal time with AM. Paragraph 6 of the paternity decree provides that

> [t]he Parties resolve to communicate with each other to come to a mutual decision about the child's life events and consider each other's opinions for any life decision of the child. If there is a disagreement, the Mother's decision shall prevail. If the parties disagree, they must attend mediation prior to future litigation:
>
> . . . .

h. The parties agree to attend mediation prior to either party filing a future motion in this litigation, unless a genuine emergency exists.

i. Each Party hereby agrees to inform the other of an intent to move at least ninety days in advance of an actual residential relocation outside of the city of Pulaski County, Arkansas.

Beverly filed a motion for relocation on February 5, 2019, requesting that the court allow her to move to Texas with AM so she could take a higher paying job. Beverly also asserted that Murphy, an endodontist, commuted weekly to his Peachtree, Georgia, practice and planned to move to Georgia. The same day, Murphy filed a motion to modify custody alleging that a material change in circumstances had occurred. Murphy asserted that, among other grounds, in addition to Beverly's impending move to Texas, she withheld and prevented visitation, harassed Murphy and his wife, refused to communicate about medical appointments, refused to let AM attend his family's special gatherings, and stopped taking AM to Montessori school, which caused a change in AM's attitude toward school and in general.

The circuit court held two hearings on the matter—one on June 3 and another on July 26. Before the testimony began, Beverly withdrew her motion to relocate, explaining that she decided not to take the job in Texas and was working in Little Rock. There was extensive testimony from the parties and witnesses. Relevant to this appeal, Murphy testified that Beverly withdrew AM from the Montessori school he was enrolled in, which caused AM to lose his interest in learning and lowered his self-esteem. He recounted several occasions when Beverly refused to follow the visitation order and interfered with the exchange process. Murphy also explained that he has an interest in an endodontic practice

2

in Georgia and that he practices there when he does not have visitation with AM. Murphy stated that a few times he was out of town during AM's visitation because Beverly changed the visitation schedule without his consent. Beverly testified that she had refused to allow Murphy's wife, Rhonda, to pick up AM for visitation at the designated time, insisting that Murphy pick up AM after work instead. Beverly explained that when her relationship with Murphy ended in late 2015, she moved to an apartment in West Little Rock. Later, she moved to a different apartment in Little Rock. Beverly testified that she gave up her apartment in January 2019 because she planned to move to Texas, but when she decided to stay in Little Rock, she moved in with her mother, who lived in North Little Rock. Beverly testified that she had no plans to move, and she had taken a job at the Friday Firm. Beverly explained that the rent payment listed in her affidavit of financial means was for the mortgage on a house in North Little Rock that she was purchasing.

On October 3, the circuit court denied Murphy's motion for modification of custody. The court found that Murphy did not prove that a material change of circumstances had occurred and that Beverly withdrew her motion for relocation because she accepted a job in Little Rock. The court modified the visitation schedule so that AM transitioned only once a week, on Wednesdays. The parties continued to share equal time, and the court found that Murphy's wife was allowed to help with drop off and pick up.

On November 13, Murphy filed a motion for contempt asserting that Beverly repeatedly prevented the Wednesday exchange of AM and provided insufficient reasons for doing so. For example, on November 6, Beverly told Murphy that AM had a skin infection, and he could not leave her care. Murphy asserted that he explained that a skin condition

3

was not cause to withhold visitation, but Beverly refused to allow him to have his scheduled visitation. Later, Murphy discovered that Beverly had refused to follow the visitation order because she had moved to Texas, and she was in Texas when it was time for the exchange.

On May 8, 2020, Beverly filed a motion to modify visitation asserting that she had accepted a job in Austin, Texas, that was beneficial to her career. She contended that she had been traveling between Texas and Arkansas to comply with the visitation order, and she asserted that Murphy was living in Peachtree, Georgia, during the week; thus, a material change in circumstances had occurred, and modification of visitation was necessary. In response, Murphy counterclaimed for a change of custody, requesting that the circuit court award him primary custody with reasonable visitation to Beverly.

The court held a hearing on the matter on October 1, 2020. Before testimony began, Murphy withdrew his motion for contempt, explaining that the contempt matter "merged into the change of custody." The court allowed Murphy to withdraw the motion. At the hearing, Murphy testified that he lives in Little Rock with his wife and their one-year-old and two-month-old children. He explained that he practices in both Little Rock and Peachtree, and he works in Peachtree on the days he does not have visitation. Murphy testified that in April 2020, he discovered from Beverly's discovery responses that she had moved to Round Rock, Texas (near Austin).[1] Murphy contended that on September 21, 2019, Beverly told him that she would like to adjust the visitation schedule to take AM on a family vacation from October 5 through 12, and he agreed; however, later, Murphy

---

[1]The abstract incorrectly sets forth that Murphy learned that Beverly lived in Texas in April 2019.

4

discovered that Beverly had begun working in Texas that week. Murphy testified that Beverly did not tell him that she moved to Texas, and on October 16, 2019, she mentioned that she was only considering taking a job in Austin. Murphy explained that in November and December, he began to be suspicious that Beverly had moved to Texas because she would not let him exercise his visitation with AM despite his insistence that he could care for AM's skin condition and wanted to have his scheduled visitation. As for his own violations of the paternity order, Murphy testified that he failed to tell Beverly about a scheduled immunization and a dermatology appointment he made for AM.

During the hearing, Murphy requested that the court allow him to reinstate the contempt motion stating that "she did violate [the order] and so I think I still want to pursue that[.]" Beverly objected, arguing that Murphy had withdrawn his motion. The court agreed with Beverly stating that "you did withdraw it at the beginning of the case and so I'm going to hold you to that."

The hearing proceeded, and Beverly testified that she did not move to Texas "full time" until the beginning of 2020. Beverly explained that in April 2020, she responded to a discovery question regarding her address by instructing counsel to refer to her May 2019 discovery response that she lived in North Little Rock. Beverly stated that she later supplemented her response with her Texas address. Beverly stated that at the July 2019 hearing, she did not mention that in January she had leased an apartment in Texas and that she filed the motion to relocate in February *after* she had accepted the job offer. Ultimately, she did not take the job in Texas, but she could not get out of the apartment lease. Beverly stated that at that hearing, she testified that she had no plan to move, and she worked at the

Friday Firm. Beverly recalled that in September 2019, she made the final decision to accept the job in Texas and began work at the beginning of October.[2] Beverly testified that in October, she told Murphy "face to face" that she accepted the job in Texas; however, she also testified that in November, she told Murphy in a text that she was living in Little Rock, and in December, when Murphy asked her where she was living, she told him that she lived in North Little Rock. Beverly explained that she should not have misled Murphy, but she "wanted some peace from the investigators at the moment." Beverly explained that typically, she had visitation with AM at her mother's home in North Little Rock where she also worked remotely. When it was time for Murphy's visitation, she would leave her mother's home and go back to Texas, and her mom would take AM to meet Murphy. Beverly stated that on November 6, she did not allow Murphy to have visitation because AM's eczema was very severe, and she denied that the real reason for her refusal was that they were in Texas. Beverly testified that she signed AM up for an after-school-care program in Texas in the coming year without telling Murphy.

In the written order entered December 10, 2020, the court determined that Beverly had accepted a job in Texas in September 2019, and she had moved to Texas before the entry of the October 3 order modifying visitation and denying Murphy's request to change custody. In November and December 2019, Beverly told Murphy she lived in North Little Rock. The court found that, according to a text exchange that occurred October 16 through 19, Murphy asked Beverly when she was going to move to Texas, and she

---

[2]The abstract incorrectly sets forth that Beverly testified she accepted the job in October 2020.

responded that "visitation needed to be worked out prior to any move" even though she had already moved. The court noted that during the July 2019 hearing, Beverly was directly asked the reason she listed a rent payment on her 2019 affidavit of financial means, and Beverly testified that she was planning to buy a home in North Little Rock, and that amount was her anticipated mortgage; however, at the October 2020 hearing, Beverly stated that the rent payment listed on the affidavit was for an apartment in Texas that she had obtained in January 2019. The circuit court found that in October 2019, Beverly asked Murphy to modify the visitation schedule for a family vacation, and instead of taking a vacation, she began working at her job in Texas. The court determined that "Beverly testified she cannot coparent with Murphy and admitted to lying to him about her move to Texas." Additionally, the court found that Beverly had taken AM out of Montessori school in 2019, had enrolled him in day care in Texas, and had begun searching for a school for AM without telling Murphy. The court determined that Murphy was not without fault—he failed to tell Beverly about a dermatology appointment made five months in advance; however, the court also found that "Murphy did attempt to make the joint custody arrangement work." Relying on *Singletary v. Singletary*, 2013 Ark. 506, 431 S.W.3d 234, and *Cooper v. Kalkwarf*, 2017 Ark. 331, 532 S.W.3d 58, the court found that in deciding a request to change custody, the circuit court must determine whether a material change of circumstances occurred since the last order and whether a change in custody is in the best interest of the child. The court found that a material change in circumstances had occurred: Beverly moved to Texas, lied about major life events, testified that she could not coparent with Murphy, and did not communicate or cooperate with Murphy. Moreover, the court found that Beverly "did not

7

do anything to promote the joint custody set out in the October 2019 order" and that the parties could not make joint custody work. The circuit court found that it was in AM's best interest for Murphy to have primary custody with visitation to Beverly because "Murphy is the more stable parent[.]" The court noted that Murphy works part time in Peachtree, but he schedules out-of-town work around his visitation with AM. The court determined that Beverly had removed AM from Montessori school in Little Rock when she planned to move to Texas, and she chose not to return him to school when she changed her mind. Beverly filed a motion for a new trial on December 21, which was deemed denied on January 20, 2021.

On appeal, Beverly argues that the circuit court erred in relying on *Singletary* and should have relied on *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003), in determining whether a custodial parent can relocate. Beverly also contends that there is insufficient evidence to support the court's finding that a material change of circumstances occurred.

Preliminarily, we address Beverly's argument that the court should have relied on *Hollandsworth* to determine whether she, the custodial parent, could relocate.

The circuit court correctly found that the case should be analyzed as a joint-custody case under the requirements set out in *Singletary*. It is undisputed that the paternity order awarded joint custody, and the parents shared equal time with AM. In *Armstrong v. Draper*, 2019 Ark. App. 114, at 5–6, 571 S.W.3d 60, 63, our court held that

> [i]n *Singletary*, the court explained that the *Hollandsworth* presumption does not apply when the parents share joint custody of a child. In a joint-custody arrangement where both parents share equal time with the child, there is not one parent-child relationship to take preference over the other, and the *Hollandsworth*

8

rationale is inapplicable. The proper analysis for a change-in-custody request due to the relocation of one parent in a joint-custody situation is the same as that when relocation is not involved; the court must first determine whether a material change in circumstances has transpired since the initial custody order and then whether the change in custody is in the best interest of the child.

(Citations omitted.)

The circuit court did not specifically find that Beverly could not relocate with AM; however, Beverly and Murphy shared joint custody with equal time to each parent, and the court's decision to change custody was in a context of parental relocation. The court specifically relied on *Singletary* and *Cooper*—both cases involved parents who shared roughly equal time with the child and the issue of parental relocation. To the extent Beverly argues that the circuit court applied the incorrect standard for determining a change of custody, we affirm the circuit court's reliance on *Singletary*.

We now turn to Beverly's remaining point on appeal regarding the court's decision that a material change of circumstances occurred. Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *Schreckhise v. Parry*, 2019 Ark. App. 48, at 6, 568 S.W.3d 782, 786. Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. *Id.* The reason for requiring more stringent standards for modifications than for initial custody determinations is to promote stability and continuity in the life of the child and to discourage repeated litigation of the same issues. *Id.*

The party seeking modification of the custody order has the burden of showing a material change in circumstances. *Schreckhise*, *supra*. To change custody, the circuit court

9

must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, it must then determine who should have custody with the sole consideration being the best interest of the children. *Id.* In reviewing child-custody cases, we consider the evidence de novo, but will not reverse a circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. Because the question of whether the circuit court's findings are clearly erroneous turns largely on the credibility of witnesses, we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Ford v. Ford*, 347 Ark. 485, 65 S.W.3d 432 (2002). There are no cases in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as great a weight as those involving minor children. *See Vo v. Vo*, 78 Ark. App. 134, 79 S.W.3d 388 (2002).

Beverly argues that the circuit court erred in finding a material change in circumstances, claiming that "warring parents often have communication issues." Beverly contends that she is being singled out for her inability to coparent, and the court put an "undue amount of merit on small communication issues" while ignoring Murphy's failure to notify her of a dermatology appointment.[3]

Our case law holds that the mutual ability of the parties to cooperate in reaching shared decisions in matters affecting the child's welfare is a crucial factor bearing on the propriety of joint custody. *Doss v. Miller*, 2010 Ark. App. 95, 377 S.W.3d 348. When the

---

[3]Beverly does not propound any argument regarding the court's best-interest determination.

parties have fallen into such discord that they are unable to cooperate in reaching shared decisions in matters affecting their children, then a material change in circumstances affecting the children's best interest has occurred. *See id.* At the hearing, Beverly testified that she could not coparent or communicate with Murphy, that she lied about a major life event, and that she did nothing to promote the joint-custody arrangement. Contrastingly, the court found that although Murphy failed to tell Beverly about a dermatological appointment he made for AM, he tried to make joint custody work. We find no error in the circuit court's finding of a material change of circumstances.

Essentially, Beverly asks this court to reweigh the evidence, which we will not do. Change-of-custody decisions must be based on the particular facts and circumstances of each case in relation to the standard of the best interest of the child. *Denarvaez v. Denarvaez*, 2020 Ark. App. 550, at 14. And as we stated above, credibility determinations are left to the circuit court, and we will not reweigh the evidence. *Glisson v. Glisson*, 2018 Ark. App. 21, 538 S.W.3d 864.

Affirmed.

GLADWIN and VAUGHT, JJ., agree.

*Harrelson Law Firm, P.A.*, by: *Steve Harrelson*, for appellant.

*Dodds, Kidd, Ryan & Rowan*, by: *Catherine A. Ryan*, for appellee.

11